James GEDDES, Shield Kogan and Hugh J. Miller, on behalf of themselves and all other persons similarly situated, Plaintiffs-Appellants,

v.

CHRYSLER CORPORATION, a Delaware Corporation, and the International Union United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW), Defendants-Appellees.

No. 77–1251.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 20, 1979.
Decided Oct. 30, 1979.

Lawrence S. Katkowsky, Keller & Katkowsky, Southfield, Mich., for plaintiffs-appellants.

John Corbett O'Meara, Philip M. Frost, Dickenson, Wright, McKean, Cudlip & Moon, Detroit, Mich., for defendants-appellees.

Marley S. Weiss, Detroit, Mich., for UAW.

Before EDWARDS, Chief Judge, MERRITT, Circuit Judge, and PECK, Senior Circuit Judge.

PECK, Senior Circuit Judge.

Appellants are a group of salaried technical and engineering employees of Chrysler Corporation who were organized by the UAW in 1968. Apparently they were rather a select group; at the time they were organized, they were receiving higher salaries and more fringe benefits than other personnel doing similar work. During the organizational campaign, the union made promises, orally and in writing, that their collective bargaining agreement would include a provision that any changes in their status respecting these special benefits could not be imposed unilaterally by the company, but only after negotiation and as part of a general reduction in the benefits received by all employees entitled to those benefits. The employees formed their own bargaining unit within Local 412 which served technical, office and professional personnel in the geographical area. A Letter of Agreement was negotiated ensuring the continuation of the group's special conditions of employment under the collective bargaining agreement.

In 1974, Chrysler notified the UAW that it was closing the offices at the Hamtramck Assembly Plant (where the plaintiffs were working) and that the operations would be resumed at new offices a few miles away at Chrysler's Outer Drive offices. It took the position that this move was a "transfer of operations" under section 57(b) of the collective bargaining agreement, and that therefore neither the transfer itself nor the employees' benefits at the new office were negotiable, a position with which the Union agreed. The plaintiffs wrote letters to the International Union, protesting the characterization of the move as a section 57(b) transfer of operations, because such a characterization left them vulnerable to unilateral action by the company and the potential loss of their special benefits. Under section 57(b), though the transfer itself is not negotiable, the "advisability of transferring to the receiving unit employees who are affected" is subject to negotiation, and a transfer agreement was worked out between Chrysler and the UAW under which the employees were offered positions at the new plant, retaining their seniority, but losing, for the most part, their special benefits and higher salaries.

The employees were laid off temporarily, their bargaining unit was disbanded, and they were later reinstated at the new location. The company and the UAW took the position that the employees would become members of the preexisting Engineering Local 212 at the Outer Drive offices. Essentially, as the plaintiffs view it, Chrysler has succeeded in stripping them of their bargained-for rights and their bargaining unit, with the Union's sanction, simply by moving their offices a few miles. This, they contend, is not a result contemplated

by the section 57 transfer provisions, nor a result permitted by a reasonable reading of the contract as a whole. Furthermore, if the contract does provide that the employees' benefits may be taken away from them unilaterally, they contend that the UAW is liable to them for breach of its express promise. Therefore, the plaintiffs filed suit, charging the company with a breach of the collective bargaining agreement, and charging UAW with a breach of its duty of fair representation, and with breach of promise.

The district court granted summary judgment to the defendants, concluding that the plaintiffs had failed to exhaust available intraunion remedies in their attempt to resolve the complaint. The court ruled that an appeal was possible to the Constitutional Convention Appeals Committee of the International Union, which the plaintiffs failed to take. The trial judge did not rule on the other issues urged by the defendants to justify their request for summary judgment, though he suggested that the issue of whether contractual remedies had been exhausted posed a "serious, and close, question." The only issue before this Court is whether the trial court properly concluded that a failure to exhaust intraunion remedies justified summary judgment in this case; we conclude that it did not, and therefore remand to the district court for further consideration.

*The Claims Against Chrysler*: The plaintiffs' position is that because of the unusual nature of their complaint, there did not exist any reasonable avenue of relief, either through the grievance procedure set out in their collective bargaining agreement with Chrysler, or through intraunion remedies set out in the UAW constitution. They point out that their problem was handled by International UAW representatives during the time when they were laid off, their bargaining unit disbanded, and their shop steward unavailable to process complaints. Once they were rehired, the UAW and Chrysler had already reached an agreement adverse to them concerning the proper interpretation of the contract, and, as the district court noted, any failure to utilize the grievance procedure made "little difference in terms of the actual airing of the grievance and consideration of it." Furthermore it appears that the company has taken the position that these benefits are not a condition of employment under the contract and are solely within its discretion, which seems to mean that the grievance procedure is not available as to revocation or alteration of the benefits. Employers are normally estopped from seeking dismissal of a claim based on failure to exhaust remedies when they have taken the position that those remedies are not available to the employees. "An obvious situation in which the employee should not be limited to the exclusive remedial procedures established by the contract occurs when the conduct of the employer amounts to a repudiation of those contractual procedures." *Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967). However, the district court did not rely on failure to exhaust *contractual* remedies in granting summary judgment to the plaintiffs, though that may be an important issue on remand, since if there was an adequate and exclusive grievance procedure available to the employees which they might have utilized, absent a showing of bad faith handling of their claim by the union they would be barred any relief. *Vaca v. Sipes, supra*, 185, 87 S.Ct. 903.

Since the sole ground upon which the district court granted summary judgment to both the defendants was the failure of the plaintiffs to use any of the intraunion remedies set out in the UAW constitution, we turn our attention to that issue. Exhaustion of intraunion remedies stands upon a slightly different footing than exhaustion of grievance procedures set out in a collective bargaining contract. Grievance procedures are normally agreed to by the employer, the union and the employee-member as the exclusive remedy for the resolution of any grievance concerning an employee's working conditions. National Agreement, Engineering, section 19, the collective bargaining agreement which governs the parties in this case, is an example

of such an agreement. The employee is therefore barred from pursuing a claim against the employer without utilizing the grievance procedure, if it is otherwise available, unless he or she can establish that the union failed in its duty to provide fair representation. The intraunion remedies, on the other hand, are part of a separate membership agreement between the union and the member; the employer has no interest in the agreement and has no right to rely on its provisions in seeking dismissal of a claim against the employer. *Fizer v. Safeway Stores, Inc.*, 586 F.2d 182 (10th Cir. 1978). We therefore hold that the district court was incorrect in dismissing the claims against Chrysler because of failure to exhaust intraunion remedies.

*The Claims Against the UAW*: It is well-established that a union has the right to provide for the exhaustion of internal remedies by its members before they bring suit against the union. So long as the remedies provided are known to the member, reasonable in terms of time and procedure, and provide a reasonable possibility of providing the relief sought, the courts have usually required the employees to exhaust those remedies before turning to the courts. *Willetts v. Ford Motor Co.*, 583 F.2d 852 (6th Cir. 1978). Such a policy provides the union with an initial opportunity to resolve internal disputes itself, if possible, avoiding both undue interference by the court in internal organization matters and the unnecessary allocation of public resources to disputes which can be resolved privately.

The policy in favor of allowing the union to attempt to resolve its internal difficulties initially is not absolute, however; the underlying test is whether the available procedures are adequate and reasonable in light of the facts of the particular case. *NLRB v. Marine Workers*, 391 U.S. 418, 428, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968). The policy arguments in favor of delay are weakest in a case like this one, which is not wholly a dispute between a union and its members, but rather is a "complex problem concerning employer, union, and employee member." *Id.* at 425, 88 S.Ct. at 1722. The

cause of action against Chrysler and the UAW relates principally to action taken by the employer, the revocation of certain benefits and salaries, which the employees contend is a breach of their contract; this complaint has little to do with internal union policy and practice, which intraunion remedies are best designed to deal with.

While the union lists a variety of potential courses of action which it contends the employees could pursue, plaintiffs contend that none of these remedies would benefit them. The employees want their benefits and special salaries back, and allege that the union's acquiescence in the company's interpretation of their contract has contributed to their inability to accomplish that end, but pursuing internal union remedies would not necessarily enable them to obtain a fair and appropriate forum. Failure to utilize internal union procedures has been excused in situations in which resort to internal remedies would be futile in the sense that the procedures are inadequate to produce the result sought. *Chambers v. Local Union No. 639*, 188 U.S.App.D.C. 133, 578 F.2d 375 (D.C.Cir.1978). Some cases have gone so far as to hold that the doctrine requiring exhaustion of internal remedies is inapplicable to cases not involving purely internal union problems. *See, e.g., Brady v. Trans World Airlines*, 223 F.Supp. 361 (D.Del.1963), *aff'd*, 401 F.2d 87 (3rd Cir. 1968), *cert. denied*, 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969). This Court has not gone so far; in a case in which the plaintiff seeks only damages, and in which damages may be awarded in the course of the union appeals process, internal remedies may be entirely adequate to provide the relief sought, even if the company is also involved in the dispute. *See, e. g., Bsharah v. Eltra Corp.*, 394 F.2d 502 (6th Cir. 1968). But in a case in which the internal remedies are clearly biased against plaintiffs we do not believe they should be required to resort to those remedies before turning to the courts for help. Such a requirement is indeed more likely to exhaust the plaintiffs than the remedies. Whether this is such a case is left for the determination of the district court on remand.

It also appears that resort to intraunion remedies might be futile in this case because it is clear that the position of the union has hardened against that of the plaintiffs. Upon their return to work, the plaintiffs were confronted with a settled position, agreed to by both the union and Chrysler. Resort to internal remedies at that point would probably not have altered the position of the union; the agreement with the company had already been reached and accorded a significant measure of finality in being reduced to a written document. Finally, if nothing else, the mere passage of time is seen as militating against requiring the plaintiffs to go back now and plead their case to the union Appeals Board or the union president; the union has been aware of this dispute concerning its members for five years and has had sufficient time to "set its own house in order," which is the primary purpose of the exhaustion requirement. However, we fall short of holding as a matter of law that the limited record before the district court on the motion for summary judgment warrants a holding by this Court that plaintiffs-appellants were not required to exhaust either their collective bargaining or intra-union remedies because such efforts would have been futile. Rather, on remand the district court is directed to first direct its attention to the question as to whether the futility exception to the exhaustion requirement has been established. If that question is determined in the affirmative, then and only then should the District Judge turn to questions of good faith in representation and the related questions of contract interpretation.

Both Chrysler and the UAW urge us to affirm the decision of the district court because, they argue, they were clearly correct in their interpretation of the collective bargaining agreement, and within their rights in the action they took, and therefore the plaintiffs have failed to state a cause of action. This is not an issue which should be presented to us in the first instance; we leave the interpretation of the contract to the trial court. No matter how straightforward provisions of a contract may seem, they can seldom be interpreted in a vacuum. We believe that the plaintiffs should have the opportunity to attempt to demonstrate in the district court that their interpretation of their contract is correct before we consider the issue.

The decision of the district court granting summary judgment to the defendants is reversed, and the cause remanded for further proceedings.