Nicholas **CICIRELLI, Jr.**, Plaintiff,

v.

**LEAR SIEGLER, INC.,** a Delaware Corporation, and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local 174, UAW, Jointly and Severally, Defendants.

**Civ. A. No. 79–73869.**

United States District Court,
E. D. Michigan, S. D.

April 6, 1981.

Bushnell, Gage, Doctoroff, Reizen & Byington by Lynn H. Shecter, Southfield, Mich., for plaintiff.

Miller, Cohen, Martens & Sugerman by Nancy Schiffer, Detroit, Mich., for defendant UAW Local 174.

Dan W. Chandler, Bloomfield Hills, Mich., for defendant Lear Siegler, Inc.

## OPINION

GILMORE, District Judge.

This case is before the Court on two motions for summary judgment; one on behalf of defendant union, and one on behalf of defendant Lear Siegler, Inc., hereinafter referred to as UAW and Lear. The motions claim that plaintiff has failed to exhaust intra-union remedies and that, as a matter of law, defendant UAW is not guilty of breach of a duty of fair representation.

Plaintiff was hired by Lear May 13, 1976, as an hourly employee. He became a member of Local 174, and for a short time was a union steward. As a union steward, he requested and received copies of the labor agreement, factory rules and regulations, local by-laws and other pertinent documents.

On May 2, 1978, plaintiff was discharged by delivery of the following employee-disciplinary notice:

"You are hereby discharged for walking off the job and leaving the plant without permission."

Plaintiff admits that he left his assigned area, but claims that his foreman had given him permission to do so, and states that he remained in the plant at the loading dock until the end of the shift, but when he went to the time clock to punch out he found that his time card was missing. Lear's position from the beginning has been that plaintiff's account is fabricated and untrue, and that

plaintiff did leave the assigned area, and left the plant without permission and without punching the time clock as he went out.

Following the discharge, and pursuant to the terms of the collective bargaining agreement then in effect, a hearing was held on May 4, 1978, concerning plaintiff's discharge. Present were the plaintiff and four members of the UAW Bargaining Committee, as well as the plaintiff's foreman and the personnel manager of Lear.

On May 5, Lear refused to reinstate plaintiff, and a grievance protesting plaintiff's discharge was filed on his behalf by the UAW. The grievance was processed through the first three steps of the grievance procedure, and on July 19, 1978, plaintiff's grievance was among those discussed at a Step 4 Grievance Procedure meeting attended by members of the bargaining committee and by Norbert Przybylowicz on behalf of UAW Local 174. The company could not be moved from its position against reinstating plaintiff, and upon receipt of the company's step 4 answer denying plaintiff's grievance, the UAW Bargaining Committee met to determine what further action to take. The options under the collective bargaining agreement were: withdrawal, immediate arbitration or deferred arbitration. Once withdrawn, no further action could be taken on the grievance, and it constituted a final and binding disposition. A grievance was to be referred to immediate arbitration if, in the judgment of the Bargaining Committee, it was a likely candidate for successful resolution in arbitration.

Deferred arbitration was essentially a holding stage for grievances which the Bargaining Committee decided not to arbitrate. No grievance in deferred arbitration could be arbitrated until all previously filed and deferred claims had been either withdrawn by the Union or submitted to arbitration. The rationale for the deferred stage is thus a recognition that some grievances, while having little chance before an arbitrator, might be settled after tempers have cooled or circumstances have changed. Although grievances which have been deferred are almost never arbitrated, they sometimes are settled during contract negotiations or, prior to that time, during a "special" or "Step 4½" meeting held to consider such grievances.

In making their determination with respect to the grievance protesting plaintiff's discharge, the members of the Bargaining Committee discussed the available evidence, noting that the company could prove that it initiated a search which had failed to locate plaintiff, and had surveilled the time clocks and discovered he had not punched out. The Union, on the other hand, concluded it could not prove plaintiff had remained in the plant. On the basis of this evaluation, the Bargaining Committee concluded that the plaintiff's grievance could not be won before an arbitrator. They, therefore, decided on deferred arbitration. Plaintiff was notified of the Bargaining Committee's action and stated that his main concern was to get back to work.

On January 10, 1979, the Union and Company met by mutual agreement for a Step 4½ meeting to consider all outstanding deferred grievances, including plaintiff's. Plaintiff's version was presented by the Union, and Przybylowicz demanded plaintiff be reinstated with back pay. After the meeting, Lear agreed to reinstate plaintiff to his former job with no break in seniority, but insisted on a 12 month probationary period and no back pay. Przybylowicz accepted the offer and made arrangements for the company to contact plaintiff concerning his return to work. Przybylowicz accepted the settlement because, in his judgment, it was the best that could be achieved given the evaluation of circumstances surrounding plaintiff's discharge.

Plaintiff refused to accept the reinstatement, claiming that he should not be placed on a 12 month probationary period, and that he should not be deprived of back pay. He called Przybylowicz, questioning his authority to settle the grievance and advising him that he would hire an attorney.

Thereupon plaintiff did retain counsel and the instant suit was instituted. At no time did plaintiff appeal to the Public Re-

view Board of the UAW, nor to the International Executive Board. These remedies are both available within the Union under Articles 32 and 33 of the International Constitution with regard to any alleged wrongful conduct by Local 174. Thus it is clear that plaintiff did not exhaust his intra-union remedies.

The UAW first claims that plaintiff's complaint is barred by his failure to initiate and exhaust his internal remedies available under the UAW Constitution. Plaintiff agrees that he did not exhaust his intra-union remedies, but claims that he was excused from exhaustion of intra-union remedies because he was unaware of the existence of such remedies because no copy of the UAW Constitution was furnished plaintiff, because the Constitution and By-Laws are unclear about the availability of an internal remedy, and because, by joining both Lear and the UAW as defendants, the intra-union exhaustion doctrine was rendered inapplicable.

■ It is clear that exhaustion of internal union remedies is a prerequisite to the maintenance of a suit by a union member against his union for breach of the duty of fair representation. *Willetts v. Ford Motor Company*, 583 F.2d 852 (CA6 1978). There the Court said:

"... The UAW Constitution has provided for internal appeals to local union membership meetings, to the International Executive Board, to the Constitutional Convention, and to the Public Review Board. Appellant has made no effort to utilize these internal appeal procedures, which he was required to do before being able to charge his local union with unfair representation ... unless resort to such procedures would be futile." Id. 855

In *Ruzicka v. General Motors Corp.*, 523 F.2d 306 (CA6 1975), the court stated the rationale for the rule:

"... The reason for this requirement is that intra-union remedies are part and parcel of the industrial in-house procedure for settling labor disputes. The primary benefit of requiring initial submission of employee complaints against a

union that refuses to help process a grievance against a company is that internal machinery can settle difficulties short of court action. Thus, federal policy requires 'staying the hand of "judicial interference with the internal affairs of a labor organization until it has had at least some opportunity to resolve disputes concerning its own internal affairs."' ..." Id. 311

It is true that an exception to this requirement was carved out in *Geddes v. Chrysler Corp.*, 608 F.2d 261 (CA6 1979). There the Court held that the policy in favor of allowing a union to attempt to resolve its internal difficulties is not absolute. They pointed out that the underlying test is whether available procedures are adequate and reasonable in light of the facts of a particular case, and that, where internal remedies are clearly biased against members, they should not be required to resort to these remedies before turning to the courts for help.

■ Plaintiff did not plead any attempt to initiate or utilize, let alone exhaust, his remedies under Articles 32 and 33 of the UAW Constitution. Plaintiff contends, however, that because the Constitution and By-Laws are, at a minimum, unclear about the availability of an internal remedy, and because plaintiff did not know about it, that he somehow should be excused, or at least the burden should be put upon the UAW to show that the internal procedure is reasonably calculated to address this particular grievance.

There is nothing in the pleadings or in the briefs, or in any of the depositions or affidavits filed in this case to establish that the available procedures for intra-union appeal would be futile, or that they would be biased against plaintiff. The record is silent on these points, and to suggest that the burden is upon the UAW to show that they are not biased, is wrong legally. It would improperly shift the burden of proof.

The exhaustion requirement is well supported by the law, and several avenues of appeal were available to plaintiff, if he felt

aggrieved by the actions of the UAW. First, he could have complained to the membership of the Local. He could have appealed to the International Executive Board, which had authority to rescind, reverse, or repeal any action of the International officers. The decision of the International Executive Board could be appealed further to the UAW Convention Appeals Committee, which has full authority to consider and decide all appeals submitted to it.

Finally, appeal could also have been made to the Public Review Board of the UAW, which consists of seven prominent and distinguished individuals who are not employed by the UAW, and who do not work under its jurisdiction. This Board has jurisdiction over:

"Those cases decided by an administrative arm of the International Executive Board, pursuant to Article 12, § 17, or by the International Executive Board, which concern action or inaction relative to the processing of a grievance, in which the appellant has alleged, before the administrative arm, or the International Executive Board, that the grievance was improperly handled because of fraud, discrimination, or collusion with the management". (UAW Constitution 33, Paragraph 8(b)).

Thus, it is clear that the Public Review Board had jurisdiction in this case.

A case which deals with the same claim plaintiff has made, namely ignorance of the appeal procedures within the union, is *Newgent v. Modine Manufacturing Co.*, 495 F.2d 919 (CA7 1974). There Newgent contended that he was not aware of the details regarding intra-union appeals or appeals from a union decision regarding grievances, and further alleged that the local union president, one Hluchan, advised him that he would have to post a $50,000 bond, and that the taking of any further intra-union steps would be senseless and fruitless. The court rejected this contention and stated:

"... The exhaustion of union remedies is mandatory under the union's constitution, and there is no question that the union remedies are in fact fair and adequate and were freely available to Newgent. By becoming a member of the Union, Newgent was contractually obligated to exhaust union remedies before resorting to a court action.... Necessarily implied in this obligation is the duty to become aware of the nature and availability of union remedies.... We hold that Newgent's allegations of ignorance and reliance upon Hluchan's directives to institute court action are not sufficient to avoid the defense of failure to exhaust union remedies, ..." Id. 927, 928.

It is clear that there has been no showing of any good reason why plaintiff did not exhaust his intra-union remedies. There were many available to him, and there is no showing that it would have been futile for him to have pursued them. Therefore the motion for summary judgment as to defendant UAW must be granted.

■ The Court must now consider the question of whether Local 174 breached its duty of fair representation of the plaintiff, because a determination of this question is crucial to a determination of the motion for summary judgment as to Lear. The employer cannot benefit from the union's dismissal because of the exhaustion doctrine. As was stated in *Geddes v. Chrysler*, supra, since intra-union remedies are a part of a separate membership agreement between the union and the membership, the employer has no interest in the agreement and no right to rely on its provisions in seeking dismissal of a claim against it.

■ Lear, nevertheless, may rely on another doctrine which is premised upon the agreement between Lear and the UAW. Generally, the settlement or other resolution of grievances achieved through the grievance procedure is given final and binding effect where the union-employer agreement embodies an exclusivity provision. See *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1961); *Ruzicka v. General Motors Corp.*, 523 F.2d 306 (CA6 1975). Thus, the settlement obtained in this case, although rejected by plaintiff, may preclude plaintiff from pursuing the instant lawsuit.

In the instant case, there was clearly a provision in the union-employer agreement indicating that the grievance procedure was plaintiff's exclusive remedy. This provision can only be avoided if plaintiff can show a breach of the union's duty of fair representation. If, on the other hand, the union has not breached its duty of fair representation, then the grievance procedure is plaintiff's sole and exclusive remedy, and Lear is entitled to summary judgment. *Vaca, supra; Ruzicka, supra.*

In *Vaca*, the court held that a breach of the statutory duty of fair representation occurs only when a union's conduct towards a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. The court pointed out that:

"Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement.... Congress declared that 'final adjustment by a method agreed upon by the parties is ... the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement.' In providing for a grievance and arbitration procedure which gives the union discretion to supervise a grievance machinery and to invoke arbitration, the employer and the union contemplate that each will endeavor in good faith to settle grievances short of arbitration. Through this settlement process, frivolous grievances are ended prior to the most costly and time-consuming step in the grievance procedures....

"If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation. Moreover,

under such a rule, a significantly greater number of grievances would proceed to arbitration. This would greatly increase the cost of grievance machinery and could so overburden the arbitration process as to prevent it from functioning it successfully.... Nor do we see substantial danger to the interests of the individual employee if his statutory agent is given the contractual power honestly and in good faith to settle grievances short of arbitration. For these reasons, we conclude that a union does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it settled the grievance short of arbitration." Id. 191, 192.

In *Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971) the court again held that for a plaintiff to prevail against his union he must show facts from which it may reasonably be inferred that he will be able to prove by substantial evidence the existence of union discrimination that is intentional, severe, and unrelated to legitimate union objectives.

There is a clear national policy set by both Congress and the Supreme Court in favor of final resolution of labor disputes in the manner set forth in the collective bargain agreement. See Section 201 of the Labor Management Relations Act of 1947, 29 U.S.C. 171(a); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).

In *Ruzicka v. General Motors Corp.*, 523 F.2d 306 (CA6 1975), the court outlined the standards of conduct required by the union's duty of fair representation. It said:

"We agree with the Fourth Circuit's analysis of the three-pronged standard established in *Vaca* for determining whether a union has unfairly represented one of its members: 'A union must conform its behavior to each of these three separate standards. First, it must treat

all factions and segments of its membership without hostility or discrimination. Next, the broad discretion of the union in asserting the rights of its individual members must be exercised in complete good faith and honesty. Finally, the union must avoid arbitrary conduct. Each of these requirements represents a distinct and separate obligation, the breach of which may constitute the basis for civil action.' ..." id., 309

■ Thus, there must be equal treatment of all members; the discretion of the union must be exercised in good faith and honesty, and the union must avoid arbitrary conduct. Failure to comply with any one of these three standards is the basis for a civil action.

It is plaintiff's position that there are sufficient factual issues raised by the pleadings, the affidavits, and the depositions to date to require denial of the motion of summary judgment as to the employer. The Court does not agree.

■ Cicirelli's complaint simply does not state sufficient facts upon which a court could find bad faith or arbitrary action, or a failure to treat plaintiff as all other members of the union were treated. Basically he complains of lack of zeal on the union's part and the failure of the union to allow plaintiff to be present at all grievance proceedings. These are not sufficient to establish a breach of the duty of fair representation. The union prosecuted plaintiff's grievance in the same manner as it prosecuted the grievance of his fellow employees, and it is customary in such circumstances for only representatives of Lear and the UAW to attend grievance meetings. The union pursued its grievance to Stage 4½ and obtained Lear's commitment to reinstate him. It was plaintiff himself who refused reinstatement. The fact that he is not satisfied with the terms of the reinstatement does not establish breach of the duty of fair representation.

To withstand this motion, plaintiff must produce evidence of a specific and substantial nature to support allegations of arbitrary, discriminatory, and bad-faith conduct of the union. Conclusory allegations of the kind alleged here are insufficient. Furthermore, the undisputed facts as developed through discovery to date has failed to even imply a breach of the duty of fair representation.

Plaintiff's grievance was vigorously pursued through Steps 3, 4, and 4½, resulting in plaintiff's reinstatement, although, had the case gone to arbitration, the union would have been unable to prove that plaintiff had not left the plant without permission. There is no showing that any representative of the union acted out of hostility towards plaintiff, or that the acceptance of the settlement was discriminatorily motivated. Nor is there any showing of arbitrary action at any stage of the proceedings in this case.

The union pursued what was at best a weak case through Stage 4½ of the grievance proceeding and obtained plaintiff's reinstatement. This was a remarkable achievement on the facts of this case.

The Court concludes that there has been no breach of the duty of fair representation by the UAW. This being so, it follows that summary judgment for Lear must be granted. If there is no breach of the duty of fair representation, the grievance procedure is plaintiff's exclusive remedy, and he may not have recourse to the courts. *Vaca*, supra; *Ruzicka*, supra.

The motions for summary judgment both of UAW and Lear are granted. Defendants should prepare appropriate judgments for entry. Defendants may tax costs.