**David K. WARNER, et al., Plaintiffs,**

v.

**McLEAN TRUCKING COMPANY, et al., Defendants.**

**Civ. A. No. C–1–82–1364.**

United States District Court,
S.D. Ohio, W.D.

Aug. 24, 1983.

Mary Kilroy, Robert Karl Handelman, Columbus, Ohio, for plaintiffs.

Sorell Logothetis, Dayton, Ohio, Robert J. Hollingsworth, Mark Alan Greenberger, Paul H. Tobias, Cincinnati, Ohio, for defendants.

## MEMORANDUM AND ORDER

DAVID S. PORTER, Senior District Judge:

This breach of contract and unfair representation case is before the Court on the motion to dismiss of defendant Local 100, International Brotherhood of Teamsters (doc. 7); plaintiffs' response thereto (doc. 29); defendant's reply (doc. 28); the motions to dismiss or for summary judgment of defendants Ohio Conference of Teamsters and Ohio Highway Drivers' Council (doc. 18); plaintiffs' response thereto (doc.

29); defendants' reply (doc. 30); the motion to dismiss or for summary judgment of defendant Ohio Joint State Committee (doc. 19); plaintiffs' response thereto (doc. 29); defendant's reply (doc. 31); plaintiffs' motion to vacate, modify, and correct arbitration award (doc. 17); and defendants' response thereto (doc. 24).

For the reasons set forth below, Local 100's motion to dismiss and the motions for dismissal or summary judgment are denied. Plaintiffs' motion regarding the arbitration award is held in abeyance pending resolution on the merits.

■ The standard we apply to Local 100's motion to dismiss is whether the amended complaint (doc. 6) is sufficient on its face to state a cognizable claim against the Local. We exercise our discretion not to treat the Local's motion as one for summary judgment, *see* 5 Wright and Miller, *Federal Practice and Procedure* § 1366, and we treat the allegations of the amended complaint as true for purposes of resolving the motion. *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

■ The standard we apply to the motions to dismiss or, in the alternative, for summary judgment is that they will be granted only if

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56, Fed.R.Civ.P. All such materials must, of course, be construed in the light most favorable to plaintiffs, as the nonmoving parties, and the burden is upon defendants to show their entitlement to summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Felix v. Young*, 536 F.2d 1126 (6th Cir.1976).

Applying this standard, we conclude that movants have not met their various bur-

dens and so are not entitled to judgment as a matter of law.

Parties to this action include the following:

Plaintiffs are members of Local 100 of the International Brotherhood of Teamsters, and are employed at defendant McLean Trucking Company's "break bulk" terminal in Cincinnati, Ohio. A "break bulk" terminal is a central distribution point from which goods are shipped throughout the midwest.

Defendants Local 100, Ohio Conference of Teamsters, and Ohio Highway Drivers' Council are all affiliates of the International Brotherhood of Teamsters. The latter two organizations apparently perform regional negotiation functions, and were involved in negotiating the uniform flexible work week at issue in this case.

Defendant Ohio Joint State Committee is a body comprised of equal numbers of representatives from labor and management. It serves as arbiter of disputes arising between management and labor which cannot be settled at the local level, and appears to perform other functions as well.

### I. *Facts*

Plaintiffs are members of Local 100 of the International Brotherhood of Teamsters, and are employed at defendant McLean's "break bulk" central distribution terminal in Cincinnati, Ohio. This case concerns a number of events which occurred between 1976 and 1982, which are described below.

In 1976, defendant Ohio Joint State Committee (OJSC) passed "Guidelines for Operation of Flexible Work Week" (PX 8), which provided that, upon agreement between local unions and employers, arrangements could be made for employees to begin their five-day work week on any day of the week. The basic purpose of the flexible week is to permit the companies to run a seven-day operation without incurring substantial overtime obligations. The 1976 guidelines provided for a vote, by the membership of the affected local, on any plan

which was agreed to between management and labor negotiating teams at the local level.

Between 1976 and 1981, several flexible work week plans were presented to the rank and file of Local 100 for votes, but each was rejected.

In June of 1981, the Teamsters Union met in Las Vegas. As a result of that meeting, the Teamsters' constitution was amended to provide that

If amendments to local or area supplements or riders to the Master Agreement are voluntarily negotiated during the term of such Agreement, such amendments must be approved by a secret ballot majority vote of the affected members, regardless of job classification, as determined, and as directed, by the Subcommittee or Committees which negotiated the Rider or Supplement of the Union Negotiating Committee named in such Master Agreement subject to appeal to the General President. Such amendment or rider also must be approved in such manner as may be specified in the Master Agreement.

Constitution of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Art. XVI, § 4 (1981).

Later in the summer of 1981, a set of "Guidelines for Operation of Flexible Work Week" was promulgated by the OJSC (Plaintiffs' exhibit 9). Those guidelines were substantially identical to the 1976 guidelines, except that they deleted the specific requirement for a majority vote of the rank and file of the affected local.

In July and August of 1981, Local 100 and McLean negotiated a flexible work week for the Cincinnati break bulk terminal. That agreement was submitted to a vote of the Local 100 members affected thereby, was approved by a majority of them, and was implemented in September of 1981 (doc. 3). The agreement provided that flexible work weeks would start on either Monday, Tuesday or Thursday.

In March of 1982, a new National Master Freight Agreement and Central States Area Local Cartage Supplemental Agreement went into effect between the Teamsters and management, effective through March 1985. Article 2, §§ 5(b), (c) of the NMFA provide that

Riders negotiated during the term of this Agreement shall be submitted for approval to the appropriate Joint Area Committee prior to the effective date thereof. Riders may become effective on an interim basis by agreement between the Employer and the Local Union, after such Riders have been filed with the appropriate Joint Area Committee.

. . . .

Approved conditions of Riders shall be made available, if requested, to all Employers similarly situated in the geographic area to which the Riders apply and to the type of operation which is specifically covered by the Riders.

In June of 1982, a meeting was held in Columbus, Ohio, which included representatives from all Ohio locals. At that meeting, the representatives voted to attempt to achieve a uniform flexible work week throughout the state of Ohio. According to the president of Local 100,

when we [the representatives] voted [on the uniformity proposal], we voted on a common flexible work week to be wrote up to where there wouldn't be fifteen or sixteen, there would be one common flexible work week. But it would still be up to the individual members to vote whether they wanted that flexible work week or whether they didn't want that flexible work week. That is the fine hair of difference. We, the forty-five locals up there, some take to position upon theirself [sic], that is the officers of the local union ... takes it upon himself to approve or disapprove of a flexible work week.

(Tr. 31). However, he did not understand that he may have been surrendering the right of the affected rank and file to vote on any such common proposal which was arrived at ("Nobody told me I was surrendering nothing," tr. 32).

Shortly thereafter, the OJSC distributed yet another "Guidelines for Operation of Flexible Work Week" (PX 12). It was substantially similar to the 1981 guidelines, but the "Implementation" clause provided only for "Approval of the Local Union" and "Sanction of the Ohio Joint State Committee" (*Id.*).

In August, 1982, McLean's filed a petition with the OJSC for implementation of the newly approved guidelines, as written, without first attempting to negotiate terms of implementation with Local 100. The leadership of the local informed both the national union leaders and the company that

> our local union stands on its commitment that the flexible work week which is presently being enjoyed by our members employed by your company shall remain in effect until such time as our representatives meet with your company to negotiate any revisions pertaining to that flexible work week.

(Plaintiffs' exhibits 4–6). Those letters were supported by grievance forms filed by the shop steward at McLean's and by a petition signed by 82 of the affected members indicating that they agreed with the local's position.

In October, 1982, the OJSC met and considered McLean's request. According to the affidavit of David Warner, the shop steward who had filed the grievance and who appeared on behalf of the local (and whose affidavit we accept as true for purposes of resolving these motions), the OJSC hearing consisted of a *pro forma* approval of the request, during which the local was not questioned about its position and which resulted in only momentary deliberation by the members of the Committee. The seven-day start flexible work week went into effect at McLean's break bulk terminal on November 22, 1982.

## II.  *Exhaustion of Intraunion Remedies*

■ Defendant Local 100 has moved to dismiss the claim against it, and defendants Ohio Highway Drivers' Council and the Ohio Conference of Teamsters move for dismissal or for summary judgment, based on plaintiffs' alleged failure to exhaust intraunion remedies available to them.

As these defendants point out, the Court of Appeals for the Sixth Circuit has stated a preference for exhaustion of intraunion remedies, where appropriate, prior to and as a prerequisite to institution of litigation. *Geddes v. Chrysler Corp.*, 608 F.2d 261, 262 (6th Cir.1979). The Supreme Court has also expressed such a preference. *Clayton v. International Union, United Automobile, Aerospace and Agricultural Workers of America*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). However, we conclude, with respect to Local 100's motion, that plaintiffs have stated a cognizable claim, and we conclude that the motions of the Council and the Conference are not well taken at this time. Our reasons are set forth below.

### A.  *Burden of Proof*

Defendants argue that the burden of pleading and proving exhaustion of intraunion remedies, or that those remedies would be futile if pursued, is upon plaintiffs in this case. We conclude that, at least for purposes of challenges to the sufficiency of the amended complaint and summary judgment, the burden lies instead upon defendants to show that adequate remedies exist and that their pursuit would not have been futile.

Our analysis of the defendants' arguments in this regard begins with the proposition that "courts have discretion to decide whether to require exhaustion of intraunion procedures." *Clayton*, 451 U.S. at 689, 101 S.Ct. at 2095. We also note the comment of the Court of Appeals for the District of Columbia that

> [i]t has, indeed, been asserted by both courts and commentators that the exceptions that have been read into the rule that a member must exhaust his intra-union remedies before suing his union have 'almost entirely swallowed up the rule itself.'

*Chambers v. Local Union No. 639,* 578 F.2d 375, 385 (D.C.Cir.1978) (citations omitted).

These points do not specifically address the issue of the allocation of the burden of proof regarding exhaustion. As noted by Judge Hillman in *Brown v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW),* 512 F.Supp. 1337, 1352 (W.D.Mich.1981), "[w]hile federal courts have almost unanimously required a preliminary attempt to exhaust intra-union remedies, few courts have decided on whom the burden of pleading and persuasion exists." After evaluating several cases holding both ways, the court concluded that

> where a defendant union in a fair representation case seeks to rely on failure by plaintiff to exhaust intra-union remedies, the burden is on the defendant, not the plaintiff, to prove that such remedies existed and were adequate. Labor organizations are better suited, due to their more intimate knowledge of the available remedy procedures, to establish that the intra-union remedies are effective and fair.

*Id.* at 1353. *Accord, McFarland v. International Brotherhood of Teamsters, Local 745,* 535 F.Supp. 970, 974 (N.D.Texas 1982) ("the Defendant union has failed to demonstrate the plaintiff's claim is barred by the exhaustion doctrine").

We also note the position of the Sixth Circuit regarding exhaustion of intra-union remedies. After stating that "[i]t is well-established that a union has the right to provide for the exhaustion of internal remedies by its members," the court noted that

> [t]he policy in favor of allowing the union to attempt to resolve its internal difficulties is not absolute, however; the underlying test is whether the available procedures are adequate and reasonable in light of the facts of the particular case. The policy arguments in favor of delay are weakest in a case like this one, which is not wholly a dispute between a union and its members, but rather is a

'complex problem concerning employer, union, and employee member.'

*Geddes,* 608 F.2d at 264.

We are unable to conclude that the burden of demonstrating inadequacy and unreasonableness should fall upon plaintiffs in this case. Such a negative burden, particularly on a challenge to the sufficiency of the complaint, would be virtually unmeetable. Moreover, it would be particularly inappropriate to place the burden upon plaintiffs in the context of motions to dismiss or for summary judgment, since the burden on such motions falls by definition upon the moving party. Thus, we conclude that, for purposes of defendants' motions, the burden falls upon them to demonstrate the existence, adequacy and reasonableness of intraunion remedies.

### B. *Local 100*

■ As Local 100 concedes, its motion to dismiss is based upon alleged "defects in the pleadings" (doc. 28 at 1), those "defects" being plaintiffs' failure to specifically allege either exhaustion or futility of intraunion remedies. The short answer to defendant's concern is that our determination that it bears the burden of demonstrating what it faults plaintiffs for failing to adequately aver disposes of its motion. However, we are aware that substantial case law requires that plaintiffs at least address the subject. *See, e.g., Baker v. Unit Parts Co.,* 487 F.Supp. 1313, 1316 (W.D.Okl.1980) (although decision to dismiss for failure to exhaust is discretionary, "[i]n light of plaintiff's total failure [to allege futility], summary judgment in favor of the Union should be granted"). Thus, we also hold that the amended complaint raises the issue of futility of intraunion remedies sufficiently to withstand the Local's challenge to its sufficiency.

In particular, plaintiffs allege that they presented their concerns to local, state, and national union officials, presented a petition to, and argued before, the Ohio Joint State Committee, and otherwise attempted to make themselves heard (doc. 6 at ¶¶ 25, 28, 29, 31), all to no avail. More signifi-

cantly, the thrust of the amended complaint is that the union defendants acted in concert with McLean to deprive plaintiffs of rights guaranteed them under the collective bargaining agreement and the Union constitution. In light of these allegations, we have no difficulty concluding that the amended complaint sufficiently raises the futility of intraunion remedies.

### C. *Ohio Highway Drivers' Council and Ohio Conference of Teamsters*

■ These defendants' exhaustion arguments address the substance, rather than the form, of the matter. They note that the Teamsters' International Constitution and Bylaws of various locals have been scrutinized by the courts and found adequate .... Should exhaustion result in a determination that the Plaintiffs' contentions, as they relate to the right to vote, are correct, the internal union remedies are more than adequate to compensate the Plaintiffs for their loss of overtime and otherwise afford the plaintiffs complete relief.

In the case at bar, the Plaintiffs have made no attempt to pursue their internal union remedies and have made no showing that pursuit of their internal union remedies will not afford them complete relief. Yet, the Plaintiffs attempt to invoke the jurisdiction of this Court to review a plainly internal union matter, a matter involving language of the Union Constitution, which has never been fully subjected to interpretation under the facts of this dispute by use of internal union appeals procedures.

(doc. 18, pp. 4–5). In so arguing, they invoke the holding in *Clayton,* where the Court noted that the exhaustion policy "has been strictly limited to disputes arising over *internal* union matters such as those involving the interpretation and application of a union constitution." *Clayton,* 451 U.S. at 688, 101 S.Ct. at 2094 (emphasis in original).

We cannot agree with defendants that interpretation of the constitution is the sole matter before the Court. It will, of course, be part of the proof should the case go to trial; however, matters of contract interpretation and fair representation are equally important. More importantly, this is far from a case involving purely internal union matters. Plaintiffs allege that McLean bargained with them in bad faith in reaching the 1981 flexible work week agreement, and that the companies and the union acted together to deprive them of their rights under the collective bargaining agreement and constitution. While we express no opinion as to the validity of these claims, or plaintiffs' likelihood of success on the merits, we cannot conclude that these allegations should be overlooked as would be necessary to reach the result defendants urge.

We are sympathetic to defendants' concern that the union be given the first opportunity to interpret the provisions of its constitution. However, we conclude that this is clearly a case which is not wholly a dispute between a union and its members, but rather is a "complex problem concerning employer, union, and employee member." *Geddes,* 608 F.2d at 264.[1]

---

**1.** We are aware of the Sixth Circuit's recent opinion in *Cehaich v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America,* 710 F.2d 234 (6th Cir.1983). In *Cehaich,* the plaintiff had been removed from his union leadership position because of dissident activities. He complained, among other things, of a violation of a guarantee of free speech in the union's constitution. The district court dismissed the case, holding that it had no jurisdiction to entertain the constitutional claim. The issue of constitutional interpretation was not raised in the Court of Appeals, which "express[ed] no opinion on the question of whether the union's bylaws of con-

stitution contain such a requirement. This is an internal matter of union governance." *Id.,* 710 F.2d at 240. We do not read *Cehaich* as holding that federal jurisdiction may never attach to cases involving interpretation of union constitution; however, we believe that, were that all that is at issue here, exhaustion would be required at a minimum. However, *Cehaich* was a case involving exclusively the relationship between union and member, and not employer-union-employee relations. It was also a case involving appointment to union leadership positions, a function which relates solely to intraunion policy formulation.

■ We also conclude, as an alternative basis for denial of these defendants' motions, that intraunion remedies have not been shown to afford the possibility of the wide-reaching relief sought by plaintiffs.

As noted by the *Clayton* Court,

> where an internal union appeals procedure cannot result in reactivation of the employee's grievance or an award of the complete relief sought in his § 301 suit, exhaustion will not be required with respect to either the suit against the employer or the suit against the union.

*Clayton*, 451 F.2d at 685, 101 S.Ct. at 2093. Movants argue that "internal union remedies are more than adequate to compensate the Plaintiffs for their loss of overtime and otherwise afford the Plaintiffs complete relief" (doc. 18 at 4). However, we cannot conclude at this juncture—and movants have not demonstrated—that all relief sought by plaintiffs would be available through intraunion procedures. In particular, we cannot envision such procedures resulting in the reinstitution of the 1981 flexible work week, as sought by the amended complaint; nor could the union's remedies result in awards of punitive damages. While the prospect for such damages is certainly slim, we cannot conclude that they will be inappropriate as a matter of law. Thus, we conclude that movants have not met their burden of demonstrating the adequacy of intraunion remedies, and decline their invitation to dismiss or grant summary judgment.

### III. *Ohio Joint State Committee*

■ The motion to dismiss or for summary judgment of the Ohio Joint State Committee has given us considerable difficulty. The Committee has been named in many lawsuits, and has uniformly been dismissed as an improper defendant, based upon findings that it was an arbitration panel performing valid arbitral functions, and so swathed in quasi-judicial immunity. *See e.g., Yates v. Yellow Freight System,* 501 F.Supp. 101, 105 (S.D.Ohio 1980) (Rubin, C.J.). In *Yates*, a breach of contract and § 301 action, the court dismissed the Committee as a defendant. The Chief Judge wrote that

> [a]s the Ohio Joint State Committee and the individual members thereof were performing a valid arbitral function, pursuant to the parties' various agreements, it is not a proper party defendant. A validly appointed arbitrator is clothed with immunity analogous to judicial immunity against actions brought by either of the parties arising out of the performance of his duties.

*Id.* (citations omitted).

Plaintiffs herein acknowledge the immunity of arbiters who are performing valid arbitral functions; they deny that the Committee was in fact performing such a function. Thus, they argue, the Committee is not immunized from liability, and so should not be dismissed.

The basis for plaintiffs' contention is complex, but we will attempt to outline it. The jurisdiction of the Committee is established in the collective bargaining agreement as

> jurisdiction over disputes and grievances involving Local Unions or complaints by Local Unions located in its state,

and

> settle[ment of] disputes which cannot be settled between the Employer and the Local Union in accordance with the procedures established in Section 1 of Article 45 [of the Central States Area Local Cartage Supplemental Agreement].

(Plaintiffs' exhibit 2 at 94–95). The agreement also provides as follows:

> [t]he Unions and the Employers agree that there shall be no ... proceedings without first using all possible means of settlement, as provided for in this Agreement, and in the National Agreement, if applicable, of any controversy which might arise.
>
> Disputes shall first be taken up between the Employer and the Local Union involved.

(*Id.* at 96).

It appears to be undisputed that the Committee acted in a capacity akin to that

of a legislative body in the first instance in this case. The 1982 "Guidelines for Operation of Flexible Work Week" (Plaintiffs' exhibit 12) were issued under the auspices of the Committee, and were signed by both co-chairmen of the Committee. The guidelines were a modification of, or a rider to, the national and regional contracts. They did not come before the Committee as the result of a grievance between an employer and a local union; rather, they came before them as a proposal from labor and management committees which sought to rectify the problems caused by the existence of a number of flexible work week programs in effect throughout the state of Ohio.

After promulgation of the guidelines, they became, by their terms, available to "any Ohio domiciled Company which meets the criteria set forth therein." [2]

As discussed above, the process by which the companies which were eligible for the uniform flexible work week under the 1982 guidelines sought their implementation was to simply petition the Committee for permission to implement them. There was, taking the allegations of the amended complaint as true, no negotiation whatsoever between McLean and Local 100 prior to the employer's petition for permission to implement the guidelines. Thus, the same body which had approved the guidelines as a policy measure was acting as an "arbitrator" in approving their implementation at the local level. It seems clear that the "arbitration" which would occur in such a situation would not be an unbiased examination of the facts as they pertained to an individual situation; taking plaintiffs' contentions as true, the Committee's action on McLean's request was a *pro forma* approval of its own prior action.[3] As such, plaintiffs allege that the Committee was not acting as an arbiter at all.

The rub, then, lies in whether the Committee was acting within its jurisdiction when it first promulgated, and then approved, the 1982 guidelines. There was no negotiation between McLean and Local 100 before the implementation request was filed; yet it appears from the contract that the Committee's jurisdiction arises from the inability to settle a dispute on the local level. Moreover, we have not found, nor have we been cited to, a provision in the contract which permits the Committee to perform legislative functions.[4]

We are unable to conclude as a matter of law that, as the Committee urges, "the OJSC, like the Change of Operations Committee in *DeVries*, performed a valid arbitral function" (doc. 31 at 6). We are likewise unable to conclude as a matter of law that plaintiffs will be unable to prove that the Committee had overstepped its bounds or acted in bad faith in approving McLean's request. Finally, we are unable to conclude as a matter of law that the Commit-

---

**2.** Article 7 of the Guidelines provides that

Implementation and/or modification of those guidelines must meet the following conditions:
A. Approval of the Local Union
B. Sanction of Ohio Joint State Committee.
C. Upon approval by the Central States Joint Area Committee this Rider becomes available to any Ohio domiciled Company which meets the criteria set forth herein. Any dispute shall be submitted to the Grievance Procedure.

**3.** Defendants cite the case of *DeVries v. Interstate Motor Freight System*, 91 L.R.R.M. 2765 (N.D.Ohio 1976), *aff'd*, 620 F.2d 302 (6th Cir. 1980) as support for their proposition that the Committee was performing a valid arbitral function in granting McLean's request to implement the guidelines. We cannot conclude that

*DeVries* is dispositive of the case at bar, however, because in that case, the procedures followed by the union were specified in the relevant collective bargaining agreement. *Id.* at 2766. Plaintiffs here allege that the procedures utilized were in contravention of the contract and the union constitution, and we cannot conclude, from the evidence now before us, that they are incorrect.

**4.** We note that it appears from the record that the OJSC has been performing the same function as it did in this case for some time, since, as mentioned above, they had approved the original flexible work week guidelines in 1976. We are thus quizzical as to plaintiffs' concern with this function; however, we have, as stated, been directed to no authority supporting the Committee's jurisdiction to perform legislative-type functions and so permit plaintiffs to proceed with their case.

tee, or some of its members, if indeed empowered to act as a legislative organ as well as an arbitral body (if the proof demonstrates that such was the case), did not owe the plaintiffs a duty of fair representation under § 301.[5]

We therefore deny the Committee's motion for dismissal or summary judgment. The basis for this denial is that the case is simply too complex on its facts to determine on the pleadings at this time. *See S.J. Groves & Sons Co. v. Ohio Turnpike Commission*, 315 F.2d 235 (6th Cir.1963); 10a Wright & Miller & Kane *Federal Practice and Procedure*, § 2732.

In denying the Committee's motion, we do not wish to imply any opinion as to plaintiffs' likelihood of success on merits, nor do we conclude that the Committee was in fact not acting in a valid arbitral capacity; we simply conclude that we do not have sufficient evidence at this time to make a final determination on this issue. Thus, the motion is not well-taken.

### IV. *Plaintiffs' Motion to Set Aside*

Plaintiffs have moved the Court to set aside the decision of the Ohio Joint State Committee (doc. 17). All defendants save Local 100 have opposed the motion (docs. 22, 24). We perceive the motion as having been filed out of an abundance of caution on plaintiffs' part. While we certainly have no basis upon which to grant the motion at this time, we see no prejudice resulting to defendants from holding it in abeyance until such time as it becomes relevant to disposition of the case. Thus, we do so.

Therefore, it is ordered that the motion to dismiss of Local 100 is denied, that the motions to dismiss or for summary judgment of the Ohio Joint State Committee, the Ohio Conference of Teamsters, and the Ohio Highway Drivers' Association are de-

nied, and that the motion to vacate, modify and correct an arbitration award is held in abeyance. We thank counsel for all parties for having done a splendid job on behalf of their respective clients.

SO ORDERED.

---

**5.** Defendant contends that as an arbitral body, it owes no § 301 duty of fair representation to plaintiffs. Plaintiffs disagree with this, arguing that because the Committee was not performing valid arbitral functions in granting McLean's request to implement the new flexible work week, the delegates to the Committee from the

union did owe such a duty. They additionally argue that the Committee owes a contractual duty of fair representation. Because this dispute is integrally tied to the general dispute over the Committee's status in this case, we do not resolve it upon the motion at bar.