**Charles MONROE, Plaintiff,**

v.

**INTERNATIONAL UNION UAW, et al., Defendants.**

No. C-3-79-288.

United States District Court,
S. D. Ohio, W. D.

April 22, 1982.

Decision and Entry On Pending Oral Motions May 11, 1982.

Frederick G. Cloppert, Jr., Columbus, Ohio, for defendants Intern. Union and Local Union.

## DECISION AND ENTRY ON PENDING MOTION FOR SUMMARY JUDGMENT; MOTION SUSTAINED; DEFENDANT UNIONS DISMISSED AS PARTIES DEFENDANT

RICE, District Judge.

The Plaintiff in this action, Charles Monroe, brought suit under § 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185, alleging that Defendants had breached their duty of fair representation and had violated the collective bargaining agreement. Three Defendants were named in the Complaint: International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW), its Local 696, and Plaintiff's employer, the General Motors Corporation (GMC). Currently pending before this Court is a motion for summary judgment (Doc. # 15), filed by the Defendants International Union and Local 696. Having carefully considered the arguments advanced in the motion, in the memorandum contra (Doc. # 23), and the reply memorandum (Doc. # 33), the Court concludes that said motion must be, and hereby is, sustained.

## I. PROCEDURAL BACKGROUND

Plaintiff was an employee of GMC at the Delco Moraine plant in Dayton, Ohio. On February 24, 1978, he was given an indefinite suspension for violating Shop Rule No. 19, which suspension was converted to a discharge on March 1, 1978. Said Rule prohibits "threatening, intimidating, coercing or interfering with employees or supervision at any time." The suspension and discharge were premised on an incident which occurred on February 23, 1978, wherein Plaintiff is said to have verbally abused and threatened a fellow employee, one Tom Manning, with a knife.

Pursuant to the grievance and arbitration procedure established by the collective bar-

Richard G. Ellison, Cincinnati, Ohio, for plaintiff.

Charles D. Lowe, Joseph Buchanan, Dayton, Ohio, for defendant General Motors.

gaining agreement between GMC and the UAW, Plaintiff filed three grievances protesting the suspension and discharge. Said agreement provides a four-step grievance procedure, with binding arbitration as the final step. Local 696 processed the grievances through the first two steps of the procedure, but filed an untimely appeal to the third step.[1] The agreement provides that any grievance not timely appealed by the Union can be considered closed by GMC. (Doc. # 33, Ex. 1, ¶ 77.) In any event, the union thereafter decided not to process the grievances beyond the third step, based on, among other reasons, the merits of the case against Plaintiff. (Doc. # 15, Ex. f, Affidavit of Dorris Duff.)

The UAW requires every union member who feels "aggrieved by any action, decision, or penalty imposed upon him" by the union to exhaust internal union appeals before "appealing to a civil court or governmental agency for redress." UAW Constitution, Art. 33, § 12. This internal union appeals procedure, established by Arts. 32 and 33 of the UAW Constitution, first directs the union member to seek relief from the membership of his local. If that fails, he may further appeal to the International Executive Board of the UAW, and eventually to either the Constitutional Convention Appeals Committee or the Public Review Board. Arts. 32, 33, §§ 3–11. The latter Board consists "of impartial persons of good public repute" who are not members or employees of the union. Art. 32, § 1.

Plaintiff claims that he did attempt to invoke the procedure, to appeal the Local's decision not to further process his grievance. He states that he orally requested a vote by the local union membership, and that he traveled to International Union's headquarters in Detroit, Michigan, in an effort to appeal the local's decision. Both efforts failed, and Plaintiff concededly made no other attempts to utilize the un-

ion's appeal machinery. Affidavit of Charles Monroe, ¶¶ 30, 32–35 (attached to Doc. # 23).

Thereafter, Plaintiff filed his § 301 action in this Court on September 20, 1979. In the complaint, Plaintiff alleges that he was suspended and discharged "for allegedly threatening a fellow employee by displaying a knife and making verbal threats." Complaint, # 6. He further alleges that said charges "were false and groundless and wholly without credible evidentiary support, and, with a minimum of investigation could have been completely disproven." ¶ 7. By failing to properly investigate and process his grievance, Plaintiff states, the Defendant unions violated their duty of fair representation through arbitrary, discriminatory and bad faith conduct. ¶ 9. In addition, GMC is alleged to have violated the collective bargaining agreement by discharging him without just cause. ¶¶ 10–12. Finally, Plaintiff alleges that because of Defendants' "arbitrary and discriminatory conduct," any further resort to intra-union remedies would be "futile." ¶ 11. The complaint properly invokes the jurisdiction of this Court under 29 U.S.C. § 185. Plaintiff prays for relief in the form of compensatory damages, reinstatement of his employment rights, and such other relief as this Court may deem just and proper.

As previously mentioned, the Union Defendants have moved for summary judgment, pursuant to Fed.R.Civ.P. 56, on two grounds: (1) Plaintiff has failed to exhaust his internal union remedies, and (2) the facts, in any case, indicate that they did not breach their duty of fair representation.

Under Rule 56, Defendants' summary judgment motion can only be sustained when the movant conclusively demonstrates, based on the pleadings, affidavits, and other material on record, that there exists no genuine issue of material fact, all

---

1. The grievance procedure provides that a "Notice of Unadjusted Grievance" must be filed "within five (5) working days of a decision of the local Plant Management." (Doc. # 23, Ex. 1), ¶ 77). The UAW local filed said Note some thirteen days after management's Step 2 answer was rendered. (Doc. # 23, Ex. 2, p. 1). In addition, the Local apparently submitted an untimely "Statement of Unadjusted Grievance" and an untimely "Notice of Appeal." (Doc. # 23, pp. 3–4; Doc. # 15, Ex. a, ¶¶ 37–38).

evidence and inferences drawn therefrom having been construed in the light most favorable to the party opposing the motion. Fed.R.Civ.P. 56(c); *Atlas Concrete Pipe, Inc. v. Au & Son, Inc.*, 668 F.2d 905, 908 (6th Cir. 1982); *Heheman v. E. W. Scripps Co.*, 661 F.2d 1115, 1127 (6th Cir. 1981). With this standard in mind, the Court now turns toward the arguments advanced in support of said motion, and will consider them in reverse order.

## II. ALLEGATION THAT DEFENDANT UNIONS DID NOT BREACH DUTY OF FAIR REPRESENTATION

■ A union fails to fairly and impartially represent its members, and thus breaches its duty of fair representation, when the union's conduct toward any member becomes arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Farmer v. ARA Services, Inc.*, 660 F.2d 1096, 1103 (6th Cir. 1981); *Ruzicka v. General Motors Corp.*, 523 F.2d 306, 309–10 (6th Cir. 1975) (*Ruzicka I*). Arbitrary or perfunctory union conduct, which is something more than mere negligence, can be a breach of the duty. However, a union is not liable for mere errors in judgment if they were made honestly and in good faith. *Farmer v. ARA Services, Inc., supra; Ruzicka v. General Motors Corp.*, 649 F.2d 1207, 1211–12 (6th Cir. 1981) (*Ruzicka II*). In addition, unexplained union inaction, which substantially prejudices a member's grievance, may be sufficiently arbitrary to constitute a breach of the duty. *Farmer v. ARA Services, Inc., supra; Ruzicka II, supra.*

■ In his memorandum contra the motion for summary judgment, Plaintiff sets forth a number of bases for his contention that the unions breached their duty of fair representation. While the evidence against the unions is hardly as compelling as Plaintiff suggests, the record before the Court does indicate that, to some degree, the unions *may* have breached their duty. Thus, since genuine issues of material fact would seem to exist on this point, the Court cannot sustain the summary judgment motion on the ground that the duty of fair representation was not breached.

The reasons advanced by Plaintiff are as follows. First, he argues a breach occurred when the Local failed to timely file the "Notice of Unadjusted Grievance." However, this admitted failure does not amount to "unexplained union inaction." An uncontradicted affidavit by Dorris Duff, a representative of the UAW, states that the management at the Delco Moraine plant "has not dismissed grievances that were appealed after the contractual time requirements to Steps 2 and 3 of the Grievances Procedure." (Doc. # 33, Ex. B, ¶ 4.) In *Ruzicka II, supra*, the Court relied on the identical practice (involving the same defendants) of granting extensions, in holding that the union's conduct was not arbitrary and did not breach the duty of fair representation. 649 F.2d at 1211–12.

Second, Plaintiff contends that his grievance committeeman "was burdened with a conflict of interest during his representation of plaintiff," (Doc. # 23, pp. 10–11), since the committeeman apparently interviewed a witness against Plaintiff, prior to the time said witness signed a statement concerning the February 23, 1978, incident. While these facts are undisputed, there is simply no basis to draw the conclusion therefrom that the committeeman did anything more than represent Plaintiff's interests.

Third, the rejection of his request for a Local membership vote, Plaintiff contends, constitutes "arbitrary conduct" violative of the duty of fair representation. Yet, Plaintiff admits that the local officials *did* explain their reasons not to grant the request, based on the weight of the evidence against him. Affidavit of Charles Monroe, ¶ 30. Moreover, Plaintiff had recourse to further intra-union appeals, as will be outlined below. In these circumstances, the Local's refusal to grant the requested vote, standing alone, does not constitute unexplained, arbitrary conduct.

Fourth, Plaintiff alleges that management personnel refused to allow him to obtain union representation, during an "in-

vestigatory interview" on the day of the incident. This action, he contends, violated both the collective bargaining agreement, and was an unfair labor practice, based on the decision in *NLRB v. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975). However, even assuming the truth of these contentions, the union's alleged failure to raise this "mitigating factor" simply does not constitute arbitrary conduct. There is no evidence that the grievance procedure would have produced a different result in the case herein, had said factor been presented by the union. Indeed, this factor seems to be more properly a subject of inquiry (if at all) by the National Labor Relations Board.[2] The Court also notes that the copy of the "Notice of Unadjusted Grievance" supplied by Plaintiff indicates that the union, in fact, *did* raise the issue during the grievance procedure. (Doc. # 23, Ex. 2, pp. 1–2.)

The remaining contentions by Plaintiff are more troublesome than the aforementioned, and suggest possible violations of the duty of fair representation. As alleged in his complaint, Plaintiff vigorously argues that the unions failed to properly investigate his grievance. In particular, he states that in "witness statements provided plaintiff by defendants Union (sic), it was found that the Unions interviewed only those 'witnesses' adverse to grievant." (Doc. # 23, p. 11.) Plaintiff has attached to his memorandum contra (Doc. # 23, Ex. 5) several statements from witnesses which, he says, are "supportive" of his position. These statements, in fact, present varying versions of the February 23, 1978, incident, but none state that Plaintiff pulled a knife on Manning. It is not clear from the "Notice of Unadjusted Grievance," (Doc. # 23, Ex. 2, p. 2), or from any of the aforementioned materials filed by Plaintiff or Defendants, whether Defendants, in fact, interviewed any witnesses more favorable to Plaintiff.

■ A failure to properly investigate a grievance, or to interview pertinent wit-

nesses, can constitute a breach of the duty of fair representation. *Findley v. Jones Motor Freight*, 639 F.2d 953, 959 (3d Cir. 1981); *Miller v. Gateway Transportation Co., Inc.*, 616 F.2d 272, 277 n.12 (7th Cir. 1980); *Donahue v. L.C.L. Transit Co.*, 492 F.Supp. 288, 292–93 (W.D.Wis.1980). Some courts have further held that "there must be a demonstration that the omission damaged the grievance presentation." *Findley v. Jones Motor Freight, supra.* Based on the materials currently in the record, the Court is unable to determine that a proper investigation was, or was not, made, in that several relevant witnesses, apparently favorable to Plaintiff, may not have been interviewed by the Local. Given the Local's reasons for dropping the grievance, which included, *inter alia*, the statements from employees that Plaintiff "did accost another employee with a knife," and the "seriousness of the offense," (Affidavit of Dorris Duff, Doc. # 15, Ex. f, ¶ 5), it is possible that the use of statements by the witnesses, suggested by Plaintiff, could have significantly lessened the apparent "seriousness" of Plaintiff's acts.

■ Equally troublesome are the Plaintiff's allegations that officials of the UAW and Local refused, on a number of occasions, to permit Plaintiff to examine his grievance file. Affidavit of Charles Monroe, ¶¶ 26–27, 29, 36. These refusals, Plaintiff contends, prevented him from adequately participating in his own grievance procedure, or from examining the statements of adverse witnesses. *Id.*, ¶¶ 36–37. In their materials submitted to the Court, Defendant unions have neither denied nor explained these refusals. A union must give a member the opportunity to participate in the grievance process. *Miller v. Gateway Transportation Co., Inc., supra*; R. Gorman, *Labor Law* 718 (1976). On the record currently before the Court, Defendant unions have apparently denied, without explanation, this opportunity to Plaintiff.

---

**2.** According to the answer to the complaint filed by the Defendant Unions (Doc. # 4, p. 3), Plaintiff apparently did file an unsuccessful charge before the NLRB. It is not clear what Plaintiff alleged in said charge.

Finally, Plaintiff argues that the Local did not present evidence in the grievance process indicating that the discharge penalty was unduly harsh. Plaintiff particularly alleges that the union failed to argue that the penalty was unjustified, in light of evidence that other employees involved in even *more* violent altercations received *less* severe penalties. (Doc. # 23, Ex. 8). The "Notice of Unadjusted Grievance" (Doc. # 23, Ex. 2, p. 2) indicates that the Union argued that "the penalty of discharge [was] too severe." However, nothing else in the record refutes Plaintiff's allegations. The alleged failure to present said evidence may have significantly diminished Plaintiff's chances of receiving a lesser penalty from GMC.

Accordingly, the Court finds that genuine issues of material fact exist with regard to the alleged failures of the defendant unions to properly investigate the grievance, to permit Plaintiff to participate in the grievance procedure, and to present evidence during the grievance process which may have mitigated the penalty of discharge. The motion for summary judgment, therefore, cannot be sustained on the ground that no genuine issue of a material fact exists as to whether Defendants breached their duty of fair representation.

### III. ALLEGATION THAT PLAINTIFF FAILED TO EXHAUST INTERNAL UNION APPEALS

■ As a general rule, an employee cannot bring suit for breach of the duty of fair representation, unless he or she has first attempted to exhaust the internal union appeals procedures, where such an attempt would not be futile. *Clayton v. UAW*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981); *Farmer v. ARA Services, Inc., supra*, 660 F.2d at 1106; *Bsharah v. Eltra Corp.*, 394 F.2d 502 (6th Cir. 1968) (per curiam). In *Clayton*, the Supreme Court recently set forth a three-part test to determine if the exhaustion of intra-union appeals would be futile:

> [C]ourts have discretion to decide whether to require exhaustion of internal union procedures. In exercising this discretion, at least three factors should be relevant: first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust.

451 U.S. at 689, 101 S.Ct. at 2095.

■ Plaintiff concededly did not exhaust the internal appeals procedures set out in the UAW Constitution. As set forth in his complaint, however, he contends that any such attempt would have been "futile," and should not be required by this Court. His contentions will require this Court to examine the UAW internal appeals procedure, under the aforementioned three-part test.[3]

---

**3.** Defendants argue that Plaintiff did not make a proper *attempt* to utilize the intra-union appeals machinery, and thus should not be able to even raise the futility argument. As noted above, Plaintiff contends that he made an oral appeal to the UAW Local, and oral and written appeals to the International Union's headquarters. In contrast, the UAW Constitution itself states that the proper manner to initiate an intra-union appeal is to file a written appeal with the Local Union. Art. 33, §§ 1–3.

Several decisions within this Circuit seemingly required a § 301 plaintiff to sufficiently allege and show an attempt to initiate the intra-union remedies, even when said plaintiff concurrently argued that exhaustion was futile. *Bsharah v. Eltra Corp., supra*, 394 F.2d at 503; *Fleming v. Chrysler Corp.*, 575 F.2d 1187, 1188 (6th Cir. 1978) (per curiam); *Manica v. Chrysler Corp.*, 97 L.R.R.M. 2679, 2681 (E.D.Mich.1978). However, the plaintiff in *Clayton* did *not* attempt to utilize the intra-union remedies, 451 U.S. at 683, 101 S.Ct. at 2092, and he was permitted to raise the futility argument. Thus, even if Plaintiff's actions herein can be characterized as a failure to properly attempt to initiate the UAW procedures, he can nevertheless raise the futility argument.

### A. Hostility of Union Officials Towards the Employee

In alleging, as noted above, that any resort to the internal appeals procedures of the UAW would be "futile," Plaintiff did not expressly charge that the union officials were "hostile" towards pursuing his grievance. An allegation of such hostility can be readily inferred, nevertheless, from the other averments in the complaint, as well as from the other materials in the record. Even assuming, however, that Plaintiff is raising the "hostility" argument, it must fail in the case herein.

Courts which have accepted the "hostility" argument have emphasized that "extreme facts" must be involved, such as where the internal appeal would have been heard, and decided, by union officials against whom the complaint was directed. *Winter v. Teamsters Local No. 639*, 569 F.2d 146, 149–50 (D.C.Cir.1977). In addressing the "hostility" argument, the Sixth Circuit recently stated that it must be "clear that such procedures are biased against the complainant." *Farmer v. ARA Services, Inc., supra*, 660 F.2d at 1106 (citing cases). The cases cited by *Farmer* hold, like *Winter, supra*, that the persons involved in the intra-union appeals procedure must be considered hostile towards the union member. *See, e.g., Varra v. Dillon Companies, Inc.*, 615 F.2d 1315 (10th Cir. 1980).

In the circumstances of the instant case, the Court may assume, without deciding, that officials of the UAW local were hostile toward Plaintiff. However, Plaintiff does not, and could not, contend that the *remainder* of the persons involved in the UAW internal appeals procedure were hostile towards him. In particular, as mentioned above, the UAW procedure culminates in the Public Review Board, a panel composed of persons not affiliated with the UAW. Plaintiff cannot prove, under this procedure, that the *entire* intra-union appeals process will be hostile towards him. Indeed, courts which have examined the UAW procedure at issue herein have reached the same conclusion. *See, Winter,*

*supra*, 569 F.2d at 151 n.26; *Jenkins v. General Motors Corp.*, 364 F.Supp. 302, 306–07 (D.Del.1973).

Accordingly, the Court finds that proof of the first prong of the *Clayton* test (hostility of union officials) has not been shown.

### B. Whether Internal Union Appeals Procedure Will Reactivate Employee's Grievance or Award Him the Complete Relief He Seeks

Plaintiff argues that the facts involved in *Clayton* are quite similar to the case at bar, and that the result in *Clayton*—that the intra-union procedures could *not* reactivate the employee's grievance or award him the relief he sought—should also control herein. Since *Clayton*, of course, also involved the UAW and a local as Defendants, it is instructive to briefly review the decision and rationale in that case.

The union claimant in *Clayton*, like Plaintiff herein, in his § 301 suit, sought reinstatement from the employer and monetary damages from the employer and the unions. 451 U.S. at 690, 101 S.Ct. at 2095. The Court found that the Public Review Board could award monetary relief to an appellee, including back pay awards. *Id.* However, the Court found that it was "equally clear" that the union could neither reinstate the claimant in his job, nor reactivate his grievance. *Id.* at 691, 101 S.Ct. at 2096. The Court pointed out that the union was bound by an earlier decision not to process the claimant's grievance past Step 3 of the grievance procedure. Thus, "the union could not have demanded arbitration even if the internal appeal had shown Clayton's claim to be meritorious," *id.*, since the 15-day time limit to pursue the grievance to arbitration had expired. However, the Court added a caveat in a footnote:

Although most collective-bargaining agreements contain similarly strict time limits for seeking arbitration of grievances, there are some exceptions. The UAW informs us that "[s]ome employers and unions have, through collective bargaining, agreed to allow the reinstatement of withdrawn grievances where a

union tribunal reverses the union's initial decision. This is true, for example, in the current UAW contracts with the major automobile and agricultural implement manufacturers." Brief for Respondents in No. 80–5049, p. 18, n. 40. In such cases, the relief available through the union's internal appeal procedures would presumably be adequate.

*Id.* at 691 n. 18, 101 S.Ct. at 2096 n. 18.

Plaintiff herein contends that, similar to the situation in *Clayton,* the UAW local missed the deadline for filing a timely "Notice of Unadjusted Grievance," and the deadlines for pursuing further steps in the grievance process have long since passed. The UAW's failure to meet these deadlines, Plaintiff concludes, forecloses the reactivation of his grievances by resort to intra-union remedies.

In contrast, Defendants argue that the facts herein are identical to those posited in the *Clayton* footnote. Defendants rely upon materials attached to their reply memorandum. Letters dated November 18, 1976, and September 19, 1979, from GMC to the UAW, indicate that those parties follow the procedures set forth in the *Clayton* footnote, namely, that a claimant, successful in the union internal appeals process, can have his grievance reinstated at the step at which the original disposition of the grievance occurred. The letters are accompanied by an affidavit sworn to by William V. Colbath, an Administrative Assistant to the Vice-President and Director of the UAW's GMC Department, who states that the letters accurately reflect practices under the collective bargaining agreement.

Said letters, however, also set forth *conditions* to the reinstatement not mentioned in the *Clayton* footnote. GMC only permits reinstatement if the parties agree (1) that GMC will not be liable for any damage claims, including back pay awards, for the period between the time of the original disposition and the time of the reinstatement, and (2) that the UAW and the employee will not sue GMC for any damages in said period before any court or any federal, state or municipal agency.

Even with such conditions, the reinstatement procedures match the *Clayton* footnote procedure. The conditions prevent a claimant from recovering a narrow part of a damage award *from the employer.* As already mentioned, monetary relief, including the damage award unrecoverable from GMC, can be obtained from the *union,* under the powers of the Public Review Board. Courts which have examined the UAW internal appeals procedure have reached the same conclusions with regard to these conditions, and have found that the UAW procedure does, as *Clayton* requires, result in either complete relief to the employee or the reactivation of his grievance. *See Battle v. Clark Equipment Co.,* 579 F.2d 1338, 1343 (7th Cir. 1978); *Manica v. Chrysler Corp., supra,* 97 L.R.R.M. at 2681–82. *See also, Miller v. General Motors Corp.,* 675 F.2d 146 (7th Cir. 1982).

Accordingly, the Court finds that the intra-union procedures which Plaintiff could have, but did not pursue, satisfy the second prong of the *Clayton* test.[4]

4. Plaintiff also argues that the Public Review Board could not grant him full relief, since that body can only consider allegations that the employee's grievance "was improperly handled [by the union] because of fraud, discrimination, or collusion with management." UAW Constitution, Art. 33, § 8(b). The jurisdiction of the other body a union member can appeal to, the Constitutional Convention Appeals Committee, is apparently not so limited. *Id.,* at § 8. In contrast, a court, in a breach of the duty of fair representation action, can consider whether the union's actions were "arbitrary, discriminatory, or in bad faith," a standard broader than that available to the Public Review Board.

The *Clayton* decision noted this distinction, 451 U.S. at 693–94 n. 24, 101 S.Ct. at 2097–2098 n. 24, but only for the purpose of rejecting the "assumption that exhaustion would narrow and focus the issues for ultimate judicial determination." *Id.* Earlier in the decision, the Court did not intimate that the restriction on the Public Review Board's jurisdiction would prevent a UAW member, in proper circumstances, from obtaining either complete review or the reactivation of the grievance. *Id.* at 691–92 & 691 n. 18, 101 S.Ct. at 2096 & n. 18. *See also, Miller v. General Motors Corp., supra,* at 149.

C. *Whether the Exhaustion of Internal Procedures Would Unreasonably Delay the Employee's Opportunity to Obtain a Judicial Hearing on the Merits of His Claim*

Unfortunately, the parties herein did not brief the applicability of the third *Clayton* factor, that is, whether resort to the UAW appeals procedure would "unreasonably delay" the employees' opportunity to obtain a judicial hearing on the merits of his or her claim. Moreover, the *Clayton* court found it unnecessary to address the substance of this test, since the UAW procedure in *that* case failed the second prong of the three-part test. 451 U.S. at 692 n. 19, 101 S.Ct. at 2097 n. 19.

The rationale for the Court's requirement of the third factor is not immediately apparent. Where the first two prongs of the *Clayton* test are met, the Court explained, "exhaustion of internal remedies could result in final resolution of the employee's contractual grievance through private rather than judicial avenues." *Id.* at 692, 101 S.Ct. at 2096. Nevertheless, an employee who had his or her grievance reactivated, but failed to win reinstatement, could, presumably, then file suit in court on a § 301 claim. *Id.* Even when the first two prongs of the test are satisfied, the Court was apparently concerned that "employees with meritorious § 301 claims [would] be forced to exhaust themselves and their resources by submitting their claims to potentially lengthy internal union procedures. . . ." *Id.* at 689, 101 S.Ct. at 2095.

While the rationale for the timeliness requirement may be discernible, the content and criteria of that requirement are more difficult to ascertain. Under any "unreasonable delay" standard, however, the UAW procedure would appear to pass muster. Aside from culminating, as already noted, before an impartial appeals panel, the procedures outlined in Art. 33 of the UAW Constitution also provide for the rela-

tively rapid disposition of appeals. A union member must appeal any decision of the local (e.g., a decision not to further process a grievance) within 60 days of the time he became aware of the action. Art. 33, § 2. If the local fails to act within 45 days, the Local Union Executive Board can pass on the appeal. § 5. The member must appeal any decision of that Board, within 30 days, to the Union president. § 6. The president can refer the appeal to the International Executive Board, which "shall use its best efforts to render its decision within sixty (60) days of receipt of the appeal. . . ." § 7(c). Finally, appeal thereafter (within 30 days) is available to either the Constitutional Convention Appeals Committee or the Public Review Board, which meet every six months and every month, respectively. §§ 8–9.

While no empirical or comparative data is in the record before this Court, these procedures have been haled by other Courts, and commentators, as being virtually unique in the American labor movement, in providing fair and rapid disposition of internal union appeals. *Winter v. Teamsters Local No. 639, supra,* 569 F.2d at 151 n. 26; *Baldini v. Automobile Workers Local 1095,* 581 F.2d 145, 148–49 (7th Cir. 1978) (citing cases); *Jenkins v. General Motors Corp., supra; Manica v. Chrysler Corp., supra* ; Comment, *The Exhaustion of Internal Union Remedies as a Prerequisite to Section 301 Actions Against Labor Unions and Employers,* 55 Chi.-Kent L.Rev. 259, 264 (1979). With this background, the Court would be hard pressed to find that the UAW procedures does not comport with the third prong of the *Clayton* test.

It might be argued, however, that § 101(a)(4) of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 411(a)(4), provides an appropriate temporal guideline for the third part of the test.[5] These authorities

---

In any event, Plaintiff herein alleged that the union's conduct was arbitrary and in bad faith, and also that it was discriminatory and involved collusion with GMC. Complaint, ¶¶ 9, 11. The latter two allegations would be cognizable before the Public Review Board.

5. The section provides, in pertinent part:

No labor organization shall limit the right of any member thereof to institute an action in any court, or any proceeding before any

suggest that there must be a likelihood that relief may be obtained from the intra-union appeal procedure, within the four month period set out in § 101(a)(4). *Johnson v. General Motors*, 641 F.2d 1075, 1080 (2d Cir. 1981) (pre-*Clayton* decision); Fox & Sonenthal, *Section 301 and Exhaustion of Intra-Union Appeals: A Misbegotten Marriage*, 128 U.Pa.L.Rev. 989, 1027 (1980). From this perspective, they conclude, the UAW procedure cannot be regarded as a timely one. *Johnson v. General Motors, supra*, 641 F.2d at 1083 n. 10 (dictum).

This reasoning is not persuasive. First, some courts and commentators have perceptively argued that, based on legislative history as well as the plain meaning of the statute, the exhaustion guidelines found in § 101(a)(4) only apply in suits under the LMRDA, *not* in suits (such as a § 301 action, as herein) under the LMRA. *See Manica v. Chrysler Corp., supra*, 97 L.R.R.M. at 2683; Fox & Sonenthal, *supra*, at 1020–22; Gould, *The Supreme Court's Labor and Employment Docket in the 1980 Term*, 53 U.Colo.L.Rev. 1, 30 (1981). *See also, NLRB v. Marine Workers*, 391 U.S. 418, 426–28, 88 S.Ct. 1717, 1722–1723, 20 L.Ed.2d 706 (1968) (discusses legislative history of § 101(a)(4); provision only applies where the grievance concerns "an internal union matter"). Indeed, the majority in *Clayton*, while stating the exhaustion policy "has its statutory roots in § 101(a)(4)," 451 U.S. at 688 n. 13, 101 S.Ct. at 2094 n. 13, did not cite that section when it formulated the aforementioned three-pronged test. *Id.* at 689, 101 S.Ct. at 2095.

Second, it is by no means clear that even applying § 101(a)(4) in the present context would negate the timeliness of the UAW procedures. The express terms of § 101(a)(4), see note 5, *supra*, would seemingly require a union member to pursue an intra-union appeal for at least four months, before being permitted to file a § 301 suit.

*Id.* at 702–03, 101 S.Ct. at 2102 (Rehnquist, J., dissenting); *Jenkins v. General Motors Corp., supra*, 364 F.Supp. at 308; Comment, *supra*, at 261. Plaintiff herein did not pursue the UAW procedures, beyond that stated in footnote 3, *supra*. Moreover, it is at least theoretically possible that, under the UAW procedures, a *final* decision could be rendered within four months from the time a union member initiated the process. Somewhat more in the realm of possibility would be the conclusion that the UAW process can be well under way within four months, and completed (assuming a member desires or needs to pursue the entirety of the process) a relatively short time thereafter. *Jenkins v. General Motors Corp., supra; Manica v. Chrysler Corp., supra*, 97 L.R.R.M. at 2684.

Thus, the Court finds that exhausting the UAW appeals process would not "unreasonably delay" an employee's later opportunity to file a § 301 suit in Court, whether that process is reviewed under a general "reasonableness" standard *or* under § 101(a)(4) of the LMRDA.

The burden is upon the employee "to come forward with specific facts showing that there was an issue concerning the futility of the intra-union remedies once [the unions] presented the necessary documentary evidence that an employee in [plaintiff's] position had intra-union remedies." *Willetts v. Ford Motor Co.*, 583 F.2d 852, 856 (6th Cir. 1978). *See also, Farmer v. ARA Services, Inc., supra*, 660 F.2d at 1106 (plaintiffs must establish "the futility of going through the union grievance machinery"). Since Defendants herein have "presented the necessary documentary evidence" of the UAW internal appeals procedure, the burden shifted to Plaintiff to "come forward with specific facts" putting the futility of the procedure at issue. For all of the foregoing reasons, the Court finds that Plaintiff has not met that burden.

administrative agency .... *Provided*, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof ....

29 U.S.C. § 411(a)(4).

Accordingly, the Court finds that there exist no genuine issues of material fact, with respect to Plaintiff's failure to exhaust the intra-union appeals procedure, and that Defendants' motion for summary judgment must be, and is, sustained on this ground.

## IV. CONCLUSION

While disputed facts exist concerning Defendant unions' alleged breach of the duty of fair representation, it is clear that Plaintiff has not established the futility of pursuing the intra-union appeals procedure of the UAW. For these reasons, Defendants' motion for summary judgment is sustained. The Defendant unions are dismissed as parties to this lawsuit. Trial upon the merits, set for the week of May 3, 1982, will go forward with the employer, GMC, as the sole remaining Defendant.

On Motions to Reconsider and to Dismiss

Two oral motions are currently pending before this Court. Plaintiff has moved for reconsideration of this Court's decision and entry of April 22, 1982, which sustained the Defendant unions' motion for summary judgment. In addition, Defendant General Motors Corporation (GMC) has moved to be dismissed as a Defendant, in light of this Court's ruling sustaining the unions' motion for summary judgment. Having considered the arguments of counsel, and the memoranda and citations of authority proferred by same, this Court disposes of these motions as follows:

### I. Plaintiff's Motion for Reconsideration is Overruled

In support of his motion for reconsideration, Plaintiff now argues that nothing in the record indicates that he was aware of the fact that exhaustion of his intra-union remedies could either (1) reactivate his grievance, or (2) afford him the complete relief he seeks. Indeed, Plaintiff also argues, by way of memorandum, that these possible results of completing the internal union procedures were "at all times thoroughly hidden" from the union membership, by the Unions and GMC. Under these circumstances, Plaintiff concludes, he should not be required to exhaust the intra-union procedures.

A review of the complaint, and Plaintiff's memorandum contra to the Unions' motion for summary judgment (Doc. # 23), and his affidavit attached thereto, indicates that Plaintiff heretofore has not raised this argument. Plaintiff's affidavit does state that on one occasion, in May of 1973 (after his discharge), union officials told him that a copy of the UAW Constitution "was not available." Affidavit of Charles Monroe, ¶ 31. The affidavit does not characterize this action as a "refusal" to deliver a copy of the UAW Constitution, and does not state that Plaintiff was unaware of the intra-union remedies, or that the same were "hidden" from him. Neither the complaint, nor the affidavit, alleges that Defendants misinformed Plaintiff as to the proper intra-union procedures to be followed.

In these circumstances, and even assuming the validity of Plaintiff's uncorroborated contention, stated only in an unverified memorandum, that he was not aware of the available intra-union remedies, a reconsideration of this Court's earlier decision is not in order. A number of courts, four from the Seventh Circuit, have held that joining the United Auto Workers (UAW), which requires all members to exhaust intra-union remedies before filing suit in court, necessarily implies a duty upon members to "become aware of the nature and availability of union remedies." *Newgent v. Modine Mfg. Co.*, 495 F.2d 919, 928 (7th Cir. 1974); *Baldini v. UAW Local No. 1095*, 581 F.2d 145, 148 (7th Cir. 1978); *Battle v. Clark Equipment Co.*, 579 F.2d 1338, 1334 (7th Cir. 1978); *Miller v. General Motors Corp.*, 675 F.2d 146, at 149 (7th Cir. 1982); *Jenkins v. General Motors Corp.*, 364 F.Supp. 302, 309 (D.Del.1973). While this position has neither been adopted, nor rejected, by the Sixth Circuit, it has been adopted by two courts within this Circuit. *Manica v. Chrysler Corp.*, 97 L.R.R.M. 2679, 2683 (E.D.Mich.

1978); *Cicirelli v. Lear Siegler, Inc.*, 510 F.Supp. 1012, 1016 (E.D.Mich.1981).

These decisions have held that union members cannot rely on their own ignorance of intra-union procedures, on their failure to determine the same, or, indeed, on misrepresentations by union officials. As noted above, no such misrepresentations are alleged in the instant case. It is true, as Plaintiff points out, that neither the UAW Constitution, nor the verified copies of *Solidarity*, the UAW magazine, in the record (Doc. # 15, Ex. J), *specifically* mention the fact that exhaustion of the intra-union procedure can lead to reinstatement of the grievance. This absence is probably because such reinstatement is not a formal part of the collective bargaining agreement between the UAW and GMC. Rather, as outlined in this Court's earlier decision, slip op. at 12, the practice is set out in letter amendments to the agreement.

Nevertheless, this absence does not absolve a union member from becoming aware of *all* intra-union procedures, and possible remedies flowing therefrom, whether they be inside, or outside, of the union constitution or the collective bargaining agreement. Prior cases have held that union members could undoubtedly "become aware," *Newgent, supra*, of these procedures, and remedies, through formal means, such as reading the union constitution or *Solidarity* (*e.g., Miller, supra; Manica, supra*), or through, perhaps, informal means, such as questioning union officials or others familiar with intra-union procedures. Although the availability of the UAW Constitution, in the case herein, is somewhat unclear, nothing else in the record indicates that the balance of formal, or informal, means of acquiring information were not available to the Plaintiff.

For these reasons, Plaintiff's motion for reconsideration is overruled.

## II. *GMC's Motion to Dismiss is Sustained*

Defendant GMC has orally moved to be dismissed from this case. This Court will construe said motion as a motion to dismiss for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), since resort to the record, outside the pleadings, appears unnecessary.

GMC argues that the *Clayton v. UAW*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981), decision dictates that an employer can rely, as a defense to a § 301 suit, on a union member's failure to exhaust intra-union remedies. Since this Court, in its April 22, 1982, decision, held that Plaintiff herein had failed to exhaust his intra-union remedies, and that said failure was not excusable, Defendant GMC argues that this suit must be dismissed against it, as well.

The law in this Circuit, prior to the *Clayton* decision, was that an employer could *not* rely on an employee's failure to exhaust intra-union remedies. *Geddes v. Chrysler Corp.*, 608 F.2d 261, 264 (6th Cir. 1979). The *Clayton* decision acknowledged the conflict among the Circuits on this issue, but stated that it "granted certiorari to resolve the conflict." 451 U.S. at 685, 101 S.Ct. at 2093. Both the union *and* the employer, the Court went on to hold, could raise, as a defense, the employee's failure to exhaust internal union procedures. *Id.* at 692 n.20 & 695, 101 S.Ct. at 2097 n.20 & 2098. *Geddes* and *Johnson v. General Motors*, 641 F.2d 1075 (2d Cir. 1981), another case relied upon by Plaintiff herein, were cited by the Court as indicative of the position which it ultimately rejected. 451 U.S. at 684 n.5, 101 S.Ct. at 2093 n.5.

Even accepting the *Clayton* holding, Plaintiff also argues that an employer cannot assert the exhaustion defense, when the employee demonstrates that the grievance procedure was flawed. Such a flaw is evident herein, he apparently contends, since he argues that the union breached their duty of fair representation, an argument which this Court, in its earlier decision, found to have raised genuine issues of material fact. (This Court, nevertheless, sustained the unions' motion for summary judgment, because of the failure to exhaust intra-union remedies.) However, the *Clay-*

*ton* decision also considered, and rejected, this argument:

> In addition, by reactivating the grievance, the union might be able to rectify the very wrong of which the employee complains—a breach of the duty of fair representation caused by the union's refusal to seek arbitration—and the employee would then be unable to satisfy the precondition to a § 301 suit against the employer.

*Id.* at 692 n.21, 101 S.Ct. at 2097 n.21. Similarly, if Plaintiff herein had exhausted his internal union remedies, and had his grievances reinstated, the unions may have been able to rectify their alleged breach of their duty of fair representation. That is, after reinstatement of the grievances, the unions may have been able to properly investigate and process the grievances, which they, allegedly, failed to do. Thus, Plaintiff cannot escape the *Clayton* decision by alleging a flawed grievance procedure.

The only point remaining for discussion is whether *Clayton*, in light of the *Geddes* holding that an employer could *not* rely on a failure to exhaust intra-union remedies, should be applied retroactively to the case herein. In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court set out three factors to be considered when determining if the usual rule of retroactivity should *not* apply. *All* the *Chevron Oil* factors, not merely one or two, must be established (by Plaintiff herein) to deprive a decision of retroactive application. *Cochran v. Birkel*, 651 F.2d 1219, 1223 n.8 (6th Cir. 1981); *Cash v. Califano*, 621 F.2d 626, 629 (4th Cir. 1980). First, the decision must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, the merits and demerits in each case must be weighed by looking to the prior history of the rule in question, its purpose and effect, and whether retroactive application will further or retard its operation. Third, the inequity imposed by the retroactive application must be weighed. 404 U.S. at 106–07, 92 S.Ct. at 355.

In light of the *Geddes* precedent in this circuit, which was, in effect, overruled by the *Clayton* decision, Plaintiff has established the existence of the first *Chevron Oil* factor. However, the second *Chevron Oil* factor weighs in favor of applying *Clayton* retroactively. As the Supreme Court stated in *Clayton*, the rule permitting the failure to exhaust intra-union appeals to be advanced, as a defense, by unions *and* employers, permits a § 301 action to proceed against *both* defendants at the same pace, 451 U.S. at 695, 101 S.Ct. at 2098, and encourages the private, rather than judicial, resolution of contractual labor disputes. *Id.* at 692, 101 S.Ct. at 2096. These policies are advanced, and implemented, by applying *Clayton* to pending lawsuits. Since the second *Chevron Oil* factor cannot run in favor of the Plaintiff, a discussion of the third factor is unnecessary. Having found that all three factors cannot weigh in favor of the Plaintiff, this Court applies the result in *Clayton* retroactively to the cause herein.

For these reasons, Defendant GMC's motion to dismiss is sustained. GMC is hereby ordered dismissed as a party Defendant to this lawsuit.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.