831 F.2d 293
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Raymond D. ADE, et al., Plaintiffs-Appellants,
v.
JOHNSON CONTROLS, INC., Int'l Union UAW, UAW Local 754,
Defendants-Appellees.
 No. 86-1851.
 United States Court of Appeals, Sixth Circuit.
 Oct. 20, 1987.
 
 Before NATHANIEL R. JONES, WELLFORD, and GUY, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiffs in this case are a group of workers and former members of the United Automobile, Aerospace and Agricultural Implement Workers of America and Local No. 754 ("Union"), laid off from Johnson Controls in June, 1979. They appeal from the district court's summary disposition of their fair representation claim, brought pursuant to 29 U.S.C. Sec. 185 (1981), in favor of the defendants. For the reasons set out below, we affirm the decision of the district court.
 
 I.
 
 2
 The plaintiffs in this case were employees at Johnson Controls' Owosso, Michigan plant (the "Company") until approximately June, 1979. They were laid off from work because of a slowdown in the automobile industry, and there is no dispute that the Company had good reason for reducing the workforce. The collective bargaining agreement ("CBA") in force at that time stated that laid off employees would lose seniority rights if they remained continuously laid off for over 18 months, and/or for a time equal to the time they worked for the Company.[1]
 
 
 3
 During contract negotiations for a new CBA in 1982, the Company's labor representative sent a letter to the Union which stated:
 
 
 4
 It is agreed that as a result of negotiations for the 1982-5 agreement, the Company will give first consideration for re-employment to those former employees who had completed their probationary period but whose services were terminated on lay-off under the provisions of 8.03(7) since June, 1979.
 
 
 5
 This letter was designed to give laid off Union members an incentive to vote for the new CBA. Many, perhaps most of the Union members understood this clause to mean that the Company would probably rehire the laid off workers before anyone else.
 
 
 6
 When work began to pick up in September, 1983 the Company began recalling employees who had not yet lost their seniority under the CBA. In addition, some employees who had lost their seniority rights were rehired. However, the Company also began hiring new people without exhausting the pool of laid off employees.
 
 
 7
 When the Company started doing this, the Union's local shop steward, Paul Britton, filed a grievance with the Company claiming that the promise of first consideration was being violated. This grievance was not initiated by the plaintiffs, and the Union maintains that it was a complaint based solely on their interest in making the Company adhere to the CBA. The Company claimed that the letter heretofore referred to was not incorporated into the CBA and that in any event it was not obligatory with respect to hiring former employees who had been laid off for some time.
 
 
 8
 The Union pursued this grievance through four stages of internal proceedings from September, 1983 through April 5, 1984. The Union decided not to take the grievance to arbitration in 1984 because it felt it could not win, and because settling the grievance was a condition to reaching a new CBA with the Company in 1984. The Union did not supply the plaintiffs with transcripts of the grievance proceedings, or allow them to participate, but did inform one plaintiff, Paul Salander (now deceased), when the proceedings were initiated and when they were dropped. Salander was also told he could petition the Union for reinstatement of the grievance if he felt he was treated unfairly. No internal Union proceedings were filed.[2]
 
 
 9
 The plaintiffs filed this action in federal district court August 3, 1984. On August 21, 1986, the district court granted defendants' motion for summary judgment and dismissed the action. This appeal followed.
 
 II.
 
 10
 The district court dismissed the case because it found "no evidence to controvert the UAW's showing that it fully observed any duty of fair representation which may have been owing in this case." The district court did not make any determination regarding the plaintiffs' obligation to exhaust their Union remedies prior to filing their lawsuit. The Union maintains that it dropped the matter because it felt it could not win at arbitration. On appeal, appellants point to five factual issues they believe raise the inference that the Union breached its duty to fairly represent them when it dropped the grievance:
 
 
 11
 A) The Union misrepresented the effect of the Company's letter to its members;
 
 
 12
 B) the Union denied that plaintiffs were still Union members;
 
 
 13
 C) the Union did not involve plaintiffs in the grievance proceedings;
 
 
 14
 D) the Union did not arbitrate despite the fact that 74 employees were still unemployed, and
 
 
 15
 E) the Union gave conflicting interpretations of the letter, and later gave conflicting reasons why the issue was not arbitrated.
 
 
 16
 We find that none of these issues give rise to a material issue of fact which makes summary judgment improper.
 
 
 17
 The parties do not dispute that, in order for the Union to be liable under section 301 of the Labor-Management Relations Act, 29 U.S.C. Sec. 185 (1981), plaintiffs must show that the Union acted arbitrarily, discriminatorily, or in bad faith. Vaca v. Sipes, 386 U.S. 171 (1967). It is also clear that no one has an absolute right to have a grievance go to arbitration. Vaca, 386 U.S. at 191; Humphrey v. Moore, 375 U.S. 335, 349-50 (1964). A union may even use poor judgment in deciding to drop a grievance, Dill v. Greyhound Corp., 435 F.2d 231, 238 (6th Cir.1970), cert. denied, 402 U.S. 952 (1971). Finally, a union has not acted in bad faith when it shows rational criteria for deciding not to pursue a grievance. Curth v. Faraday, Inc., 401 F.Supp. 678, 681 (E.D.Mich.1975). Appellants here are apparently attempting to show that the Union acted in bad faith towards them in dropping the grievance, which was filed in the first instance by the Union, not the plaintiffs.
 
 
 18
 The appropriate standard for summary judgment is not whether a scintilla of evidence in support of the plaintiff's position exists, but whether there is material evidence on which the jury could reasonably find for the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Summary judgment will result if a party cannot show the existence of an element essential to his claim. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Thus, the plaintiffs here must produce evidence on which a jury could have relied to find the Union acted in bad faith or discriminatorily in dropping the grievance.
 
 A.
 
 19
 Appellants can point to no facts which unequivocably raise an inference of bad faith. They first point to the fact that the Union initially told them that the Company's letter meant laid off workers would probably be rehired. Appellants claim that this is evidence of the Union's bad faith in later dropping the grievance. It is true that the Union's former local president admitted that the Union believed the Company meant to rehire most of the laid off workers, and one of the plaintiffs testified that he was told he was "guaranteed" recall at a Union meeting. There is also testimony that the purpose of the letter was to give laid off workers incentive to vote for the 1982 CBA. Appellants ask that this be considered evidence that the Union later dropped the grievance arbitrarily and capriciously in order to prevent the plant from closing down and to save their own jobs. (Brief of Appellants at 11.)
 
 
 20
 We construe this argument to mean that the Union and the employer agreed to present an illusory promise to laid off workers which would make them vote for the CBA. Not only do appellants assert this without producing any evidence of such an agreement or conspiracy, they do not contradict the Union's claim that it thought the Company would rehire them. The conspiracy argument, moreover, does not explain why, if the letter was an illusory promise, the Union pursued a grievance which the union itself initiated through four stages of proceedings without being asked to do so by the laid off workers. This claim therefore simply does not raise an inference of bad faith on the part of the union and its officers under these circumstances.
 
 
 21
 Appellants also assert that misrepresentation of the status of the letter, by itself, creates a breach of the Union's duty. They cite Farmer v. ARA Services, Inc., 660 F.2d 1096 (6th Cir.1981), to support their claim that explaining the terms of a union contract in a misleading manner is a breach of duty to its membership. The misrepresentation in Farmer, however, involved a conscious effort by the union to hide from its female members the fact that the contract shifted duties and pay scales to place all female members in lower paying jobs. Id. at 1104. As stated above, appellants here have not shown that the Union purposefully negotiated a nonbinding agreement to rehire laid off workers in order to mislead them, as in Farmer. At most, the evidence produced shows the Union was mistaken in its belief that the Company was agreeable to rehiring its former employees and would hire them before hiring others. Without evidence of some intentional or deliberate wrongdoing on the union's part, the unusual facts of Farmer do not apply here. We therefore find this argument of plaintiffs to be unpersuasive.
 
 B.
 
 22
 Appellants argue that evidence of bad faith exists in the fact that the Union did not believe them to be or treat them as active union members at the time the grievance was filed. They have produced evidence which shows that the Union's shop steward, Paul Britton, doubted that the laid off workers were still Union members and related this belief to the appellants. This evidence, however, again fails to show bad faith on the part of the Union. It is, indeed, questionable as to whether plaintiffs were union members; many conceded that they did not consider themselves union members at the pertinent time. It does not explain why Britton pursued a grievance for the ultimate benefit of the appellants, or why he would inform at least one of the plaintiffs that he could appeal to the Union for reinstatement of the grievance. If appellants are arguing that the Union dropped their grievance in bad faith because it felt they were no longer Union members, they have not explained why the Union went to any trouble at all on their account. Plaintiffs in their depositions concede that they did not pursue claims as purported members with union officials during the pendency of the grievance.
 
 C.
 
 23
 Appellants point to the fact that the Union did not allow them to participate in the grievance proceedings as evidence of bad faith in later dropping it. They also claim that they were not kept informed of the progress of the proceedings. The evidence cited shows that the shop steward considered the grievance to be in the name of the Union and not the appellants (although they stood to benefit by this action). This fact does not lead to the conclusion that the grievance was dropped for improper reasons. Again, there is no logical link between this evidence and appellants' claim of unfair representation.
 
 
 24
 The related argument, that the Union's failure to keep plaintiffs abreast of grievance proceedings is by itself a breach of duty, is not persuasive because plaintiffs do not dispute that the grievance was not brought in their name but in the Union's name. They do not claim that the grievance was brought on their behalf for their benefit, without their request or knowledge. They also do not claim that the union had a duty to furnish them documents under those circumstances. They also do not deny that the Union has a right to file a grievance in its own behalf where it was pursuing a grievance in its own right for the incidental benefit of members or former members. The case they cite, Monroe v. International Union UAW, 540 F.Supp. 249 (S.D.Ohio 1982), does not support their contention here.
 
 D.
 
 25
 Appellants go on to charge that the failure to arbitrate resulted in 77 former employees not being rehired. They argue therefore that the Union's refusal was either capricious, discriminatory, or in bad faith. They point to nothing to make this unfortunate situation relevant to any showing of breach of duty, but argue only that the number of people affected made it worth the risk of arbitration. This evidence may show bad judgment, but it does not establish arbitrariness, discrimination, or bad faith. Dill v. Greyhound Corp., 435 F.2d 231, 238 (6th Cir.1970), cert. denied 402 U.S. 952 (1971). Neither does this argument tend to show a breach of the Union's duty under the undisputed circumstances of this case.
 
 E.
 
 26
 Finally, the appellants claim that the Union gave different reasons for not pursuing arbitration, and that this shows a breach of duty or bad faith. While contradictions could show improper motive, the appellants in fact have shown no contradictions. Britton's stated reason for not going to arbitration was because the International Union's Arbitration Department informed him that they could not win. Appellants claim this statement differed from the statement of Stan Marshall, the Union's regional director for Michigan District 1. However, Marshall stated only that he was not aware of any clauses with similar language going to arbitration. Marshall's statement does not contradict Britton's reason. The Union's International Arbitration Department might well have had information of which Marshall knew nothing. There is no claim that Marshall was the authoritative voice on the question of arbitration. Indeed, Marshall himself later stated that the Union advised him he could not prevail at arbitration with similar language in a different CBA.
 
 
 27
 Appellants also fail to show that the Union's initial position, that the letter would result in laid off employees being rehired, is in conflict with its later position that it could not force the Company to hire all of its former employees. As previously stated, the evidence shows that the Union initially believed the Company was going to hire most of its old employees. When the Company did not follow that course, the Union felt it could not compel the Company to take such action under the language of the letter and under the undisputed circumstances at the time. This is consistent with the Union's argument that it believed the Company was going to rehire old employees, but at the same time had serious doubt that it could compel the Company to do so through the arbitration.
 
 
 28
 In sum, none of appellants' allegations, even if true, constitute a requisite showing of bad faith on the Union's part in this case. Rather it reflects that the defendant Union did all it reasonably could for plaintiffs under difficult economic circumstances. There is no material fact in dispute indicating arbitrariness, bad faith or malfeasance.
 
 III.
 
 29
 For the reasons set forth above, the district court's grant of summary judgment is AFFIRMED.
 
 
 
 [1]
 It appears undisputed that a number of the plaintiffs had been laid off for over 18 months at the time of some of the actions complained about
 
 
 [2]
 Because the district court dealt with the appellants' substantive claims, and because we affirm the decision on these grounds, we do not reach the issue of whether the workers were required to exhaust internal union remedies before filing this action