**Harry G. DAVIS, et al., Plaintiffs,**

**v.**

**SEBRING FOREST INDUSTRIES, INC., Defendant.**

**Civ. A. No. C–1–82–1331.**

United States District Court, S.D. Ohio, W.D.

April 25, 1984.

Earle Jay Maiman, Paxton & Seasongood, Cincinnati, Ohio, for plaintiffs.

G. Jack Donson, Taft, Stettinius & Hollister, Cincinnati, Ohio, for defendant.

## MEMORANDUM AND ORDER

DAVID S. PORTER, Senior District Judge.

This case is before the Court on a motion for partial summary judgment filed by defendant Sebring Forest Industries (doc. 24), plaintiffs' opposition thereto (doc. 30) and defendant's reply (doc. 31). The motion is addressed to plaintiffs' claims for relief under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. Because we have concluded that there are no questions of material fact for the jury as to plaintiffs' anti-

trust assertions, we grant summary judgment as to those counts of the complaint.

The controversy in this case arises from a contractual arrangement between plaintiffs Harry and Mary Davis, husband and wife, and Sebring. The contract provided that defendant, a manufacturer and marketer of artificial fireplace "logs," would market and distribute the Davis's product known as "Realwood." Realwood is just that—seasoned, split firewood packaged in one-cubic-foot cartons for sale through retail outlets. For present purposes, we assume the veracity of the factual allegations reflected in pages 1–4 of plaintiff's memorandum in opposition to the instant motion (doc. 30).

### A. *Summary Judgment*

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c), Fed.R.Civ.P. All such materials are construed in the light most favorable to plaintiffs, as the nonmoving parties. *Warner v. McLean Trucking Co.*, 574 F.Supp. 291, 293 (S.D.Ohio 1983). Moreover, "summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles ...." *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).[1] We note, however, that we are adopting plaintiffs' statement of facts for present purposes; we also note that the questions presented in defendant's motion are more nearly questions of law than of fact. We therefore do not view *Poller* as militating significantly against determination of the motion at bar.

---

1. The Fifth Circuit referred to the "facile notion ... that antitrust cases are typically unsuited for summary procedures" in *Alladin Oil v. Texaco, Inc.*, 603 F.2d 1107, 1110 (5th Cir.1979)—a state-

ment noted with apparent approval in *Richter Concrete Corp. v. Hilltop Concrete Corp.*, 691 F.2d 818, 822 (6th Cir.1982).

## B. *Sherman Act, Section 1 Count*

Plaintiffs allege 14 counts in their complaint, including, beyond the antitrust allegations, claims for breach of contract, promissory fraud, fraud, breach of fiduciary duty, unfair competition, conversion, misappropriation, unjust enrichment, constructive trust, and quantum meruit (doc. 1). The first count asserts a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, which makes illegal "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade ...." The complaint asserts that

> [b]y inducing the Davis (sic) to grant Sebring an exclusive sales and distribution contract, and by failing effectively to perform on that contract through deceitful representations regarding, among other things, their intention to create a formal business relationship with the Davis', Sebring intentionally caused the Davis' bankruptcy, thus injuring them in their business or property in violation of Section ....

Doc. 1 at 34. As we now understand plaintiffs' claim, it is that Sebring and the Davises joined together in a conspiracy to restrain trade in Realwood, thus violating the Act.

It is clearly possible, in certain cases, for an antitrust conspiracy to include as primary actors those who later seek to redress the harm done by the combination. *See generally Albrecht v. Herald Co.*, 390 U.S. 145, 150 n. 6, 88 S.Ct. 869–872 n. 6, 19 L.Ed.2d 998 (1968). However, "*Albrecht's* theory of combination requires a finding that the antitrust plaintiff was coercively induced to participate in the alleged illegal activity." *Barnosky Oils, Inc. v. Union Oil Company of California*, 665 F.2d 74, 78 (6th Cir.1981). In the case at bar, plaintiffs contend that the illegal activity was, first, the exclusive distributorship arrangement and, second, the maintenance of the contract through fraudulent means. We conclude that the first of these allegations addresses legal conduct, and that the second addresses unilateral conduct not subject to § 1 scrutiny.

As to the exclusive dealership arrangement, "it is [n]either uncommon [n]or illegal for a manufacturer to enter into contracts that provide particular customers exclusive rights to sell [its] product in designated geographical areas." *Cernuto, Inc. v. United Cabinet Corp.*, 595 F.2d 164, 167 (3d Cir.1979), *citing United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 376, 87 S.Ct. 1856, 1864, 18 L.Ed.2d 1249 *overruled on other grounds, Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977). *See also Fuchs Sugars & Syrups, Inc. v. Amstar Corp.*, 602 F.2d 1025, 1030–31 (2d Cir.1978) (*en banc*).

Plaintiffs assert that, rather than being presumptively legal, exclusivity arrangements are to be examined under the rule of reason, *citing GTE Sylvania*, 433 U.S. at 57–59, 97 S.Ct. at 2561–2562. However, we think that plaintiffs misread that case. While the Court held that vertical restrictions are to be examined under the rule of reason, the grant of a distributorship is not itself a restriction. Rather, a vertical restriction is a condition placed by a manufacturer on its distributors once the distribution chain is in effect, or as a condition to establishing a distribution network. At any rate, the matter is largely put to rest by the recent decision in *Monsanto Company v. Spray-Rite Corporation*, —— U.S. ——, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), where the Court reaffirmed a manufacturer's "right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." *Id.*, —— U.S. at ——, 104 S.Ct. at 1469 (citations omitted).

The only difference between plaintiffs' assertion in this case and the situation in *Monsanto* is that here it is the manufacturer attacking its own decision to grant a dealership, instead of others attacking the agreement between the distributor and the producer; we see no resultant difference.

■ We therefore hold that, as a matter of law, plaintiffs cannot attack the parties' decision to enter into an exclusive dealership arrangement as a violation of the antitrust laws.

■ The other aspect of plaintiffs' Section 1 count which is attacked by Sebring's motion is the insufficiency of the conspiracy allegation. Plaintiffs asserted that "the unlawful combination of which the Davises complain is the combination between Sebring and themselves" (doc. 30 at 6), and further assert that "Sebring entered into a combination in violation of Section 1 ... which had the purpose and effect of eliminating the Davises from the relevant market" (*id.* at 14). Thus, plaintiffs thrust themselves into the awkward position of arguing that they, as conspirators, conspired with Sebring to bring about their own demise and thrust themselves into bankruptcy. As noted, we accept the proposition that, under the *Albrecht* line, an antitrust conspirator may later sue its co-conspirators, particularly where its participation was coerced. *Barnosky,* 665 F.2d at 78. Here, however, the plaintiffs may reasonably assert only that it was Sebring's private goal, in entering into the contract, to engineer the demise of plaintiffs' business. As their statement of facts makes completely clear, *plaintiffs'* goal was to sell more firewood through an enhanced distribution system allegedly promised by Sebring.

That being so, the Section 1 claim must fall to the rule that the statute "is not concerned with individual conduct, no matter how anticompetitive." *Overseas Motors, Inc. v. Import Motors, Ltd.,* 375 F.Supp. 499, 531 (E.D.Mich.1974), *aff'd* 519 F.2d 119 (6th Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975).

■ An element of an effective conspiracy allegation is that *the conspiracy* —as opposed to *a conspirator*—has an unlawful purpose, or at least seeks to accomplish an unlawful end through legal means. *See United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 210–13, 60 S.Ct. 811, 838–39, 84 L.Ed. 1129 (1940); *Lamb Enterprises, Inc. v. Toledo Blade Co.,* 461 F.2d 506, 518–19 (6th Cir.1972). Here, plaintiffs simply cannot allege that they and Sebring shared a common goal of destroying plaintiffs' business; therefore, the commonality of purpose required by the Section 1 cases cannot be proven in this case.

## C. *Sherman Act, Section 2 Count*

Section 2 of the Sherman Act, 15 U.S.C. § 2, provides as follows:

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States ... shall be deemed guilty of a misdemeanor....

Civil actions enforcing the terms of Section 2 are authorized by Section 4 of the Act, 15 U.S.C. § 15. Plaintiffs allege violations of each provision of Section 2, *i.e.,* they claim that Sebring

acted with the specific purpose and intention of excluding competition by the Davis', in creating and attempting to create and conspiring to create a monopoly in the relevant geographic and product markets.

Doc. 1 at ¶ 28.

■ Claims of monopolizing, intending to monopolize, and conspiring to monopolize under Section 2 turn on proof of at least two elements. The first is possession of monopoly power in the relevant product and geographic markets; the second is "the wilful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Borough of Lansdale v. Philadelphia Electric Co.,* 692 F.2d 307, 311 (3d Cir.1982) and cases cited therein. The "ultimate consideration" in determining whether monopoly power exists "is whether the [defendant controls] the price and competition in the market for such part of trade or commerce as [it is] charged with monopolizing." *United States v. E.I. DuPont de Nemours & Co.,* 351 U.S. 377, 380, 76 S.Ct. 994, 999, 100 L.Ed. 1264 (1956).

Defendant here contends that plaintiffs will be unable to prove that it exerts sufficient market presence to constitute a mo-

nopolist. The affidavit of defendant's president asserts two factors critical to Sebring's position. The first is that there is only one source for data reflecting sales of artificial logs in the Southern Ohio area, an organization known as Sales Area Market, Inc. ("SAMI"). The second is that

> [f]or the 52 week period of April 5, 1980 through April 3, 1981, SAMI reported Duraflame's share of sales in artificial logs ... throughout the United States was 61.28%.
>
> For [the same period], SAMI reported Sebring's share of the sales of artificial logs through grocery warehouses in the Cincinnati/Columbus [Ohio] area at 20.99%. In the same time period, SAMI reported Sebring's share of sales of artificial logs through grocery warehouses throughout the United States at 3.95%.

MacIsaac Affidavit at ¶¶ 8–10. Therefore, Sebring reasons, "[t]here can be no actual monopolization or attempted monopolization claim ...." Doc. 24 at 10.

Plaintiffs respond to this argument by attacking the geographical market upon which the SAMI statistics are based, the narrowness of the product market reflected by SAMI, and reliance upon market share principles in general. We note that plaintiffs' response to the Section 2 argument made by Sebring contains no citations to case law.

■ Plaintiffs' assertions as to the composition of the market relied upon by defendant are without merit. As to the geographical composition of the SAMI market, they simply assert that the relevant market here is only the greater Cincinnati area, as opposed to the southern Ohio figures reflected in the SAMI report. However, despite the fact that extensive discovery has been conducted herein, plaintiffs do not assert that Sebring's sales are significantly greater in this area than in the Columbus or Dayton areas; rather, they simply state that "Sebring's market share ... is a question of fact ...." Doc. 30 at 12. Given a complete absence of evidence counterbalancing MacIsaac's admittedly "self-serving" affidavit, *id.*, we hold that the remote

possibility that Sebring's market share 'in this area is that of a monopolist despite the fact that its share in southern Ohio is less than 21% is not sufficient to withstand summary judgment.

Plaintiffs also claim that the relevant product market is not reflected in the SAMI data because it includes only artificial logs, instead of including "sales of cartoned firewood or other prepackaged combustible fireplace materials." *Id.* at 11–12. "It is a fundamental tenant (sic) of the Davis' Complaint that artificial logs compete directly with cartoned firewood." *Id.* at 12. We fail to see how this assertion aids plaintiffs' cause: expanding the relevant product market, while arguably lending credence to plaintiffs' claim that Sebring sought to monopolize, necessarily reduces the portion of the market constituted by Sebring products.

■ Finally, we reject the proposition, urged by plaintiffs, that market share percentage statistics are not significant in Section 2 analysis. While the passage which plaintiffs quote from Sullivan's *Antitrust* may present an attractive intellectual proposition, the cases overwhelmingly hold that failure to prove monopoly capability through market control as reflected in percentages is fatal to a Section 2 claim. *See, e.g., DuPont,* 351 U.S. 377, 76 S.Ct. 994 (while defendant controlled 75% of submarket it controlled only 20% or less of total market, an amount insufficient to withstand dismissal); *Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.,* 614 F.2d 832, 841 (2d Cir.1980) (estimated 48.3% market share insufficient to withstand summary judgment).

We therefore hold that defendant's motion is well taken as to the Section 2 allegations contained in the complaint. As to the "attempt to monopolize" allegation, we note that there is no " 'dangerous probability' " that Sebring might have effectuated a monopoly under any market formulation. *See Nifty Foods,* 614 F.2d at 841, *citing Times-Picayune Publishing Co. v. United States,* 345 U.S. 594, 626, 73 S.Ct. 872, 889, 97 L.Ed. 1277 (1953). The foregoing mar-

ket strength discussion applies to the Section 2 conspiracy allegations, and so we say no more about that.

### D. *Standing under Section 4*

Sebring also advances as an alternative basis for judgment herein that plaintiffs lack standing under Section 4 of the Clayton Act, 15 U.S.C. § 15, to seek treble damages for the conduct delineated in the complaint. We do not address this point for two reasons. First, we have already determined that the motion will be granted as to the elements of the Sections 1 and 2 offenses. Second, the parties neglected to analyze the standing issue under standards enunciated last year by the Supreme Court in *Associated General Contractors v. California State Counsel of Contractors*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) and by the Sixth Circuit in *Southaven Land Co., Inc. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1083 *et seq.* (6th Cir. 1983). Defendant's argument appears to have merit. *See e.g., Long v. Mountain Trust Bank*, 1983–2 Trade Cas. (CCH) ¶ 65,571 (W.D.Va.1981). However, because of the specificity of the analysis mandated by the *Southaven* court, 715 F.2d at 1085 *et seq.*, we decline to decide the matter because of the failure of the parties to address the criteria delineated there.

### *Conclusion and Order*

There being no unresolved questions of material fact pertaining thereto, defendant's motion for summary judgment is granted. Counts 1 and 2 of the complaint are dismissed. The Court declines to determine whether or not plaintiffs have standing to sue under 15 U.S.C. § 4.

SO ORDERED.